# MARY MYLANDER *vs.* CATHERINE BEIMSCHLA.

*Nuisance—Injury to Adjoining Property from Defective Condition of Rain-spout and Drain—Liability of Lessor of Premises—Assumption of Fact in Prayer.*

The provision of Code, Art. 5, sec. 9, that no instruction actually given shall be deemed defective by reason of any assumption of fact therein, unless objection thereto for such defect was taken at the trial, does not apply to rejected prayers, and hence a prayer assuming a fact, instead of leaving it to the finding of the jury, will be held to be properly rejected although no special exception to it was taken at the trial on that ground.

If at the time premises are rented a rain-spout and gutter on them are in such a condition that the water is turned upon the adjoining house, flooding the cellar and injuring the walls, the lessor is liable for the damage so caused.

When at the time premises are rented they are in good condition and the landlord is under no obligation to make repairs, he is not liable for injuries to third persons caused by the defective condition of the property subsequently arising while it is in the possession of the tenant.

But if the premises when rented are in a defective condition then the landlord is liable to third parties for damages directly caused by such condition.

Defendant leased a house and lot to one S in 1899 and the premises, were then in good order. In 1902 the leasehold interest was transferred to one F, who was accepted by defendant as his tenant. Plaintiff, owner of the adjoining house, brought this action to recover damages for injuries to his walls and the flooding of the cellar caused by the defective condition of the rain-spout and gutter, which ran alongside of his wall. *Held.* that the defendant is liable if the defective condition existed at the time his house was rented to F, the second tenant, and there is legally sufficient evidence of that fact to go to the jury.

*Held*, further, that since the evidence shows that some of the injury complained of was sustained while S was the tenant, for which the defendant is not liable, a prayer is erroneous which instructs the jury that if they find a verdict for the plaintiff he is entitled to recover such damages as will fairly compensate for the injuries to his property according to the evidence in the case. Under this instruction the jury might consider themselves authorized to award damages to the plaintiff for all the injury sustained by reason of the defective condition of the spout and gutter without regard to the time when it occurred.

Appeal from the Baltimore City Court (DOBLER, J.)

The cause was argued before MCSHERRY, C. J., BRISCOE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE JJ.

*Wm. S. Bansemer* (with whom was *R. B. Tippett* on the brief), for the appellant.

*Edward L. Ward* for the appellee, submitted the cause on his brief.

BOYD, J., delivered the opinion of the Court.

The appellee sued the appellant for "negligently permitting the waste and rain water from her property to be thrown up against and upon the north wall of the plaintiff", thereby causing the injury set out in the declaration. The appellee relied especially upon the ground that the appellant had permitted the rain-spout, which was supposed to carry the water from the roof of her house, to become and remain in such condition that it turned the water upon the house of the appellee, injuring the wall and foundation, and causing the cellar to be damp and unhealthy. The appellant's defense was based mainly upon the fact that her house had been occupied by tenants during the time the damage was alleged to have been sustained, and claimed that the property was in proper repair when she rented it. A verdict was rendered against her and she appealed from the judgment entered thereon. Exceptions were taken to the granting of the 1st, 2nd and 4th prayers of the plaintiff and to the rejection of the 1st, 2nd and 5th of the defendant. The bill of exceptions containing the rulings on those prayers present the only questions for review by us, as the exception to the refusal to grant two prayers offered at the conclusion of the plaintiff's case was waived by the defendant proceeding with her testimony.

There was legally sufficient evidence tending to prove that the plaintiff's house was injured by reason of the condition of the rain spout of the defendant and the way the yard of the

latter was graded—turning the water from the spout against the plaintiff's house. The "shoe" or elbow at the bottom of the spout was off. There was some testimony that this condition of the plaintiff's property had existed for four or five years, but the plaintiff did not ascertain the cause of the injury for sometime after it was first noticed. The evidence shows that Charles E. Smith & Co. rented the house of the appellant on October 16th, 1899, at $20.00 per month. W. F. Mylander, a son of the appellant, testified that it was then rented by the year. In the fall of 1902, A. G. Fiedler bought the business of Charles E. Smith & Co., who were florists, and with the consent of the appellant took possession of the property and became her tenant. He testified distinctly that he was a monthly tenant and that the appellant accepted him as such. W. F. Mylander said, "they consider Fiedler is a yearly tenant and not a monthly tenant", but, however that may be, there is evidence tending to show that a new tenancy was created with Fiedler. Charles E. Smith & Co. had no written lease and the term seem to have been an indefinite one, although Mr. Mylander said they rented by the year. But Fiedler and the appellant entered into an arrangement by which he was accepted as the tenant and after that paid the rent monthly in advance, as Smith & Co. had done, and the exact terms of his tenancy are not material under the view we take of the case.

The plaintiff's first prayer instructed the jury that if they found that at the time of renting to Fiedler the down-spout and gutter were in such improper and neglected condition as to be a nuisance, or were in such condition that they would in the nature of things become so by their user, and the defendant received the rent from Fiedler, then the defendant was liable, if the jury believed the plaintiff's property was damaged by virtue of such condition, and as a direct consequence thereof. The evidence is not very clear about the actual condition of the down-spout and gutter when Fiedler became tenant, but there was some evidence reflecting on it, and at any rate there was no special exception to the prayer for the as-

sumption of any fact or the want of evidence.   Sec. 9 of Art.
of the Code provides that "no instruction *actually given* shall
be deemed to be defective by reason of any assumption therein
of any fact by the said Court   *   *   *   unless it appear
from the record that an objection thereto for such defect was
taken at the trial; nor shall any question arise in the Court of
Appeals as to the insufficiency of evidence to support any in-
struction actually granted, unless it appear that such question
was distinctly made to and decided by the Court below."   The
defendant's second prayer did ask the Court to instruct the
jury that *as* the defective condition of the rain-spout and yard
in the defendant's premises is only shown to have existed
during a period when said premises were in the possession of
one Fiedler, a tenant of the defendant, and *as* the said defec-
tive condition is not shown to have existed when possession
of said premises was delivered to Fiedler, the plaintiff has not
made out her case and the verdict must be for the defendant.
There was some evidence tending to show that such condition
did exist four of five years before the trial (April, 1905), which
was before Fiedler became tenant, and the prayer was there-
fore properly rejected.   The statute just quoted does not apply
to rejected prayers, and hence the assumption of a fact would
make it defective.   The plaintiff's *first* prayer was properly
granted.   Her *second* was very much to the same effect as the
*first*, being somewhat fuller in the statement of questions sub-
mitted, and it will not be necessary to now say anything fur-
ther about that.

The plaintiff's *fourth* prayer was on the measure of damages
and was under the circumstances of this case calculated to
mislead the jury.   It was as follows: "That if the jury find a
verdict for the plaintiff under the instructions of the Court,
then the plaintiff is entitled to recover such damages as will
fairly compensate her *for the injuries to her property according
to the evidence in this case*, provided the jury believe the plain-
tiff has sustained such injury, by reason and as direct conse-
quence of the improper and neglected condition of the down-
spout and gutter in the defendant's yard."   Under the evidence

some of the injuries complained of were sustained before Fiedler became tenant—while Charles E. Smith & Co. were tenants. The rule of law in this State is that the landlord is not obliged to make repairs during the tenancy, unless he has agreed to do so, and "the common law has always thown the burden of repairs upon the tenant, though it imposes no obligation on him to make them unless he covenants to do." *Gluck's case*, 81 Md. 326. Of course it may become necessary for the tenant to make the repairs for his own protection, as he is not relieved of paying the rent, unless his landlord has agreed to make the repairs, and the property has become untenantable by reason of his failure or neglect to do so. Under those circumstances one of the tenant's remedies is to abandon the property and thereby relieve himself from liability for rent. In Gluck's case as there was no agreement on the part of the landlord to keep the property in repair and the tenant was consequently still liable for rent, the latter was bound to repair for his own protection, and hence we held he was entitled to recover as part of his damages (in the opening of a street by the city of Baltimore) the sum required to rebuild a front wall in the condemnation proceedings, and to restore an elevator which had to be removed. In this case neither the appellant nor the appellee nor Smith & Co. agreed to make repairs during the tenancy of either.

The uncontradicted evidence is that when Charles E. Smith & Co. took the property, the appellant made some little repairs before turning it over to them, and her son testified: "That in looking over the building he examined also the yard, and found everything in good shape, and there was a shoe on the rain-spout in 1899, when witness was there looking (over) the property. That since that time witness' mother, the defendant, has never had possession of that property." Another witness, who was a carpenter, testified that he made improvements on the property for the appellant in 1895—that he had the yard graded, and "that the yard was not paved until Mrs. Mylander got it, excepting that part against that wall had been, and that when Mrs. Mylander put the yard in condition,

she· put a *brand* new rain-spout from top to bottom with a shoe on the end of it, was put next to the plaintiff's house on her wall." There is no contradiction of the evidence of those witnesses, as to the condition of the property at the times named by them. There is no evidence that the appellant had any notice of the down-spout and gutter being out of repair, while Charles E. Smith & Co. were occupying the property as tenants, and, of course, under the circumstances we have related, the appellant·would not be responsible for damages by reason of the defective condition of the spout and gutter during the tenancy of that firm. The only theory upon which she could be held liable at all was that when she rented the property to a new tenant it was her duty to see that it was not then in such condition as would, or was likely to, injure third persons. The plaintiff's first and second prayers are based on that theory, and the defendant's fourth prayer, which was granted by the Court, not only recognized that to be the law on that subject, but went further than the defendant had a right to ask, as it altogether ignored the change of tenants.

This fourth prayer did not limit the damages to injuries to the property from the time that Fiedler became tenant, but the jury might very well have understood that they could allow the plaintiff damages for all injury sustained by reason of the defective condition of the spout and gutter, regardless of the time when it occurred. The plaintiff's. evidence tended to show that the injuries commenced before Fiedler became tenant and indeed both of her prayers are based on the theory that the conditions complained of then existed. The plaintiff's witnesses who testified as to the amount of damages to the property did not, and probably could not, say what part of the damages were caused *before*, and what *after* Fiedler became tenant, and yet the plaintiff could not recover for damages sustained while Charles E. Smith & Co. were tenants, under the circumstances detailed in this record. The plaintiff's second prayer concluded by submitting to the jury to find "that by virtue of said condition" (referring to that of the down-spout and gutter), "and as a direct consequence

thereof, the plaintiff's property was flooded with water prior to 1902, and since 1902, and damages according to the evidence, if they so find, then the plaintiff is entitled to recover in this action from the defendant." It is very questionable whether that may not have been misleading, but as we suppose the reference to the flooding *prior to 1902* was intended to reflect upon the condition when Fiedler got possession, and the prayer only concludes that the plaintiff was entitled to recover, without stating for what, we did not hold that prayer bad, but when we come to the *fourth* that expression in the *second* undoubtedly might help to mislead the jury. So taking all these matters into consideration we are constrained to hold that there was error in granting the *fourth* prayer, because it did not limit the recovery to damages sustained after Fiedler became tenant, and is very misleading.

The defendant's *first* prayer was properly rejected as there was legally sufficient evidence entitling the plaintiff to recover something. What we said about the *second* in another connection is sufficient, and we will not further refer to that. The *fifth* was manifestly erroneous as it entirely ignored the condition of the down-spout, gutter, &c., at the time Fiedler rented the property.

It follows that the judgment must be reversed for the error in granting the *fourth* prayer.

*Judgment reversed and new trial awarded,*
*the appellee to pay the costs.*

(Decided January 11th, 1906.)