# UNITED SURETY CO. *vs.* CLINTON SUMMERS— CLINTON SUMMERS *vs.* UNITED SURETY CO.

*Pleading—Several Demurrer to Different Counts of Declaration—Averment in Declaration of Contract Sued on—Duplicity—Documentary Evidence—Action Against Surety on Bond of Building Contractor—Alteration in Specifications After Execution of Bond—Notice of Default of Principal to Surety—Stipulation in Building Contract for Payment of a Sum for each Day's Delay Held to Be for Liquidated Damages— Instructions in Action for Breach of Building Contract—Requirements of Building Inspector Made a Part of the Contract.*

A demurrer, "to the plaintiff's declaration and to every count thereof," is a several demurrer to each count, as well as a joint demurrer to the whole declaration.

In an action on a bond conditioned for the due performance of a building contract, it is not necessary that the declaration should set out the contract in its exact words, nor is it necessary that the bond should be so set out.

When the first count of a declaration sufficiently states the contract sued on, that statement need not be repeated in subsequent counts. It is enough in these counts to declare the contract to be the same as set forth in the first count.

A declaration alleging a breach of a contract need not negative matters of defeasance relied on by defendant's pleas.

In an action for breach of a building contract, the declaration need not allege with particularity the precise time for which damages for delay in doing the work are claimed, nor the exact date when the defendant abandoned the work. These are matters of evidence.

A declaration claiming damages for defendant's failure to complete a building within the stipulated time and also damages for defective work on the building is not bad for duplicity.

These are not two distinct causes of action, but various kinds of damage resulting from a single act—*i. e.,* the failure to do the work properly within the prescribed time.

A document purporting to be the report of an engineer of his inspection of a building is not admissible in evidence because not authenticated, and also because it is merely what the engineer stated, not under oath, and is therefore hearsay.

In an action against a builder for breach of his contract to finish a building by a certain time, the plaintiff is entitled either to liquidated damages for the delay, if validly provided for in the contract, or to such damages as the delay is proved to have caused to him. One element of the latter is the rental value of the building, and consequently, if the plaintiff is not entitled to liquidated damages, evidence is admissible as to such rental value. But evidence as to the rental value of another building occupied by plaintiff at the time is not admissible.

In an action against a surety on a bond conditioned for the doing of certain concrete work according to specifications, defendant alleged that it had been discharged from liability because a material alteration had been made in the plans and specifications after the execution of the bond. The evidence examined, and held to show that no such alteration had been made.

A contractor's bond provided that the surety should be notified in writing of any act on the part of the contractor which might involve a loss for which the surety would be responsible. The contract provided that a certain stairway should be constructed. This was omitted by the direction of the architect, but the contractor was paid therefor. *Held,* that the failure to notify the surety of this omission does not operate to discharge the bond, under this clause, since it does not involve any loss for which the surety would be liable.

A contract for the erection of the re-enforced concrete work in a building provided that the work should be finished within seventy working-days from the time of its commencement, and in case said work is not finished within said seventy days, then the contractor shall pay to the owner the sum of fifty dollars per diem for every day in excess of seventy days occupied by him in completing said work; and in case said work shall be

satisfactorily finished before the expiration of seventy days, as aforesaid, then the owner shall pay the contractor the sum of fifty dollars per diem for each day of seventy days not occupied in so completing said work. The contract price for doing said concrete work was nearly fourteen thousand dollars, and the building was designed for the accommodation of plaintiff's established and increasing business. It would be difficult to estimate the money loss to him from the delay in obtaining possession of the new building. *Held,* that this stipulation is for liquidated damages, and not a penalty, since the fifty dollars per diem is not unreasonable, and that the plaintiff is entitled to recover the same for each day's delay of the contractor beyond the seventy days.

When the sum fixed as damages for each day's delay in the completion of the building beyond the prescribed time is itself reasonable and proper to be recovered as liquidated damages, the fact that the delay by the contractor was continued for a long time does not render the sum excessive and unconscionable.

A prayer asserting that a certain sum is due and unpaid under a contract is erroneous, when the evidence shows that although that sum was unpaid it was not due because of a breach of contract by the contractor.

When a contract provides that the floors of the building to be constructed shall carry a certain number of pounds to the square foot, "all to be with safety factor of four," meaning, according to the evidence, that the floor should not break under less than four times the weight it is required to carry, a prayer is erroneous which assumes that certain tests of these floors were satisfactory when it ignores the safety factor of four.

In an action for a breach of a building contract, a prayer which limits plaintiff's right of recovery to defective work in eleven beams which actually broke under the tests made, is erroneous, because there was evidence in the case that one of the girders, as distinguished from the beams, was of bad material, and also because there was evidence to show the necessity of general steel re-inforcement, to make the building sufficiently

strong, and of the fireproofing of this steel work to make the building fireproof, as required by the contract.

When a contract provides that the requirements of the Building Inspector of the city shall be a part of the contract, the contractor is not entitled to charge the owner as for extra work for the doing of things required to be done by the Building Inspector.

In an action upon a building contract, a prayer of the defendant asserting that the plaintiff is liable for the cost of replacing certain work if the jury find that it was not condemned on account of defendant's bad material or workmanship, "but for causes for which the plaintiff was responsible," is erroneous, because it does not refer to any specific act of the plaintiff.

When a prayer is rejected, it is not necessary to take a special exception on the ground that it assumes a fact.

*Decided February 10th, 1909.*

Appeal from the Superior Court of Baltimore City (EL-LIOTT, J.).

Certain clauses of the contract referred to in the opinion of the Court were as follows:

8. That all of said work shall be completed and finished to the absolute satisfaction of said owner in seventy working days; and that the day of the commencement of said work shall be designated by the owner, and the said owner shall have the privilege at any time of temporarily discontinuing said work; the period of said discontinuance is not to be counted however, in said seventy days, it being understood that no time shall be counted against said contractor unless the walls are in position and ready for his work.

9. That in case said work is not finished and completed within seventy days as aforesaid, then the said contractor shall pay unto the said owner the sum of fifty dollars ($50) per diem for every day in excess of seventy days occupied by him in finishing and completing said work.

10. That in case the said work shall be satisfactorily finished and completed before the expiration of seventy days as aforesaid, then the said owner shall pay unto the said contractor the sum of fifty dollars ($50) per diem for each day of said seventy days not occupied by the said contractor in so finishing and completing said work.

*Plaintiff's 1st Prayer.*—Upon the prayer of the plaintiff the Court instructs the jury that if they shall find from the evidence that Engelbert C. Lawrence entered upon the performance of his contract of May 17, 1906, with the plaintiff, read in evidence, on or about the 18th day of June, 1906, and after working thereon until August 23, 1906, then voluntarily quit and abandoned the same, without default on the part of the plaintiff, leaving a large part of his work undone and unfinished, and that upon his said voluntary abandonment of his said work the plaintiff notified the defendant thereof in writing, and that said notice was duly received by the defendant; and if the jury shall further find that upon the receipt of said notice the defendant, in the exercise of the right reserved by it in the bond sued on, assumed the said contract and employed E. A. S. Whitford to complete the said contract of Lawrence for it in his place and stead; and if the jury shall further find that the work undertaken to be done by said Lawrence under said contract was not done by him whilst he was engaged thereon, or by said Whitford acting on behalf of the defendant, in the mode, within the time and with the materials and workmanship prescribed in said contract of May 17, 1906, but that, on the contrary, bad materials were used or bad workmanship put on the first and second floors of the building in question or upon the back stairway or into the roof of said building; and if the jury shall further find that in consequence of the use of said bad materials or bad workmanship on the first and second floors of said building, three of the reinforced concrete beams under the first floor and eight of the reinforced concrete beams under the second floor of said building cracked and sheared in February, 1907, and that for the purpose of strengthening said cracked and

sheared beams the plaintiff was put to expense, or that in consequence of said bad materials or bad workmanship on the back stairway the plaintiff was put to expense in the strengthening and repairing thereof; or that in consequence of said bad materials or bad workmanship used in the roof the same collapsed on January 25, 1907, and the plaintiff was put to expense in temporarily covering or protecting said collapsed roof and in replacing and permanently restoring the same and in rebuilding the parapet wall thereof, and was also delayed in obtaining full possession of his said building, then the plaintiff is entitled to recover upon the bond sued on such sum as the jury shall find from the evidence to be reasonably necessary to be expended by him in strengthening said first and second floors, and in repairing and strengthening said back stairway, and in temporarily covering and protecting said collapsed roof, and in replacing and permanently restoring the roof on said building, and rebuilding the parapet wall thereof, so as to make said first and second floors, said back stairway and said roof as strong and serviceable as they would have been if the good material or good workmanship, or both good materials and good workmanship prescribed by said contract of May 17, 1906, had been used in and about the construction of said reinforced concrete work.

The Court further instructs the jury that the plaintiff is also entitled to recover such sum as the jury shall find from the evidence to be reasonably necessary to be expended to make the first and second floors as completely fireproof as they would have been if the three beams under the first floor and the eight beams under the second floor had been properly constructed with good materials and workmanship. (*Granted.*)

*Plaintiff's 2nd Prayer.*—Upon the prayer of the plaintiff the Court instructs the jury that if they shall find from the evidence that the said work was not completely finished within seventy working days, accounting from the day of the commencement thereof and adding to said seventy working days all working days during which the jury shall find from the evidence said work was delayed by the architects and builders

of the plaintiff, then the plaintiff is also entitled to recover from the defendant by way of additional damages the sum of fifty dollars for every day in excess of said seventy working days occupied by said Lawrence and the defendant upon said work, and said additional days during which the jury shall find said work was delayed by the architects and builders of the plaintiff down to the time when they shall find the plaintiff took possession of said building.  (*Refused.*)

*Defendant's 11th Prayer.*—That it is undisputed that the 1st floor and the 2nd floor of the plaintiff's building mentioned in the evidence were found, upon tests, satisfactory to the Building Inspector and the architects and builders of the plaintiff, and if the jury shall find that upon making subsequent tests of the said floors the plaintiff placed or caused to be placed upon them a greater weight than 175 lbs. and 225 lbs. to the square foot respectively, there can be no recovery by the plaintiff in this action repecting any alleged defects which subsequently developed in said two floors.  (*Refused.*)

*Defendant's 13th Prayer.*—That by the true construction of the contract entered into between Engelbert C. Lawrence and the plaintiff, which was offered in evidence, for the reinforced concrete work on plaintiff's building at the corner of Eutaw Street and Cider Alley, in the City of Baltimore, this defendant is not liable for any settlements, shrinkage or other faults, in said reinforced concrete work, unless the same, if the jury shall find that any exist, arose from defective or improper materials or workmanship, nor can there be any recovery against the defendant in this case, if such settlements, shrinkage or other faults in said reinforced concrete work, if the jury shall find any to exist, arose from the fact, if the jury shall find such fact, that the plaintiff required tests for greater strength and weight than those mentioned in the specifications forming a part of said contract, namely, 175 lbs. to the square foot on the 1st floor, 225 lbs. to the square foot on the 2d floor, and 50 lbs. to the square foot on the roof, or if they find they arose through any negligence on the part of the

plaintiff or any agent or servant of his directly contributing thereto.  (*Granted.*)

*Defendant's 14th Prayer.*—That if the jury shall find from the evidence that the alleged defects appearing in the three beams under the 1st floor and in the eight beams under the 2d floor of the plaintiff's building complained of by him were caused by the settling of the south wall of said building then there can be no recovery by the plaintiff against the defendant respecting said eleven defective beams.  (*Granted.*)

*Defendant's 15th Prayer.*—The defendant prays the Court to instruct the jury that it is not liable for damages, if any, that the plaintiff may have suffered which were caused by delays in the construction of the reinforced concrete work 'upon the plaintiff's building occasioned by the Inspector of Buildings after Engelbert C. Lawrence, the original contractor, ceased to work upon the building and before the witness E. W. S. Whitford commenced work upon the same, if the jury shall find that there were such delays.  (*Granted.*)

*Defendant's 16th Prayer.*—That the defendant cannot be held liable for the cost of any reinforced steel construction work in the plaintiff's building, unless they find from the evidence that the three alleged defective 1st floor beams and the eight alleged defective 2nd floor beams of said building, as described in the evidence, became so by reason of defective material or workmanship, and unless they further find that the said alleged defects did not occur through any fault of the plaintiff; and the jury is further instructed that in no event can the defendant be held liable for the cost of said steel construction work, nor for fireproofing the same, except in so far as it relates to said eleven alleged defective beams.  (*Granted.*)

*Defendant's 17th Prayer.*—That if the collapse of the roof of the plaintiff's building mentioned in the evidence was caused by the bricklayers employed by the plaintiff going and working upon the same, and the collapse was not caused by defective materials or workmanship used or performed in the construction thereof, then there can be no recovery in this action by reason of the falling of said roof.  (*Granted.*)

*Defendant's 18th Prayer.*—That the plaintiff is not entitled to recover in this action, unless the jury are satisfied by a preponderance of evidence satisfactory to them that the alleged defects in the reinforced concrete work in the plaintiff's building complained of by him were occasioned either by defective material or workmanship, or both, and unaffected by any act of the plaintiff or those representing him directly contributing thereto.   (*Granted.*)

*Defendant's 19th Prayer.*—The defendant prays the Court to instruct the jury that if they shall find from the evidence that it is liable under the bond sued upon for the condition of the three alleged defective beams on the 1st floor and the eight alleged defective beams on the 2nd floor of the plaintiff's building mentioned in the evidence, and they shall further find that said beams could have been replaced with other beams of like materials, which could be made of equal strength and effectiveness as the other beams on the same floors, respectively, if they shall so find, then the plaintiff is only entitled to recover with respect to said eleven beams such sum as would have been necessary to expend for the replacing of said alleged defective beams with new beams of like material and workmanship as would comply with the requirements of the contract for their construction offered in evidence and such other reasonable cost and outlay as would have been occasioned by and incident to the removal of said beams and the replacing of the same with new ones. (*Granted.*)

The cause was argued before BOYD, C. J., PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY. JJ.

*Frank Gosnell* (with whom was *Edwin J. Farber* on the brief), for the United Surety Co.

*John Prentiss Poe* and *Charles F. Harley*, for Clinton Summers.

PEARCE, J., delivered the opinion of the Court.

This is an action upon a bond executed by the United Surety Company, the defendant below, to Clinton Summers, the plaintiff below, given to secure the faithful performance by Engelbert C. Lawrence of a certain agreement in writing between him and said Summers, under seal, for the furnishing and erection of all the re-inforced concrete work in and about a certain building then in course of erection for said Summers upon the northeast corner of Eutaw street and Cider alley in the City of Baltimore, "said building to have a frontage of forty-nine feet and ten inches on Eutaw street and one hundred and three feet on Cider alley."

The declaration contained five counts. The first count set out in full the said agreement between Summers and Lawrence, dated May 17th, 1906, which is in the usual form of such contracts adopted in Baltimore, and it also alleged that on the same date the said Lawrence, for the purpose of securing the due performance of his said agreement, delivered to said Summers a bond in the penalty of $30,000, executed jointly by himself and said Surety Company, and then set out the same in the precise words and figures thereof. This was signed and sealed by the Surety Company, and was signed, but not sealed by said Lawrence.

The first count then further averred that "said Lawrence entered upon the performance of said contract, and did work and furnished materials in and about said building, but did not well and truly keep and perform his said contract, but on the contrary broke the same in the particulars following, to wit, that he did not do his work in a good, workmanlike, substantial and efficient manner, nor did he furnish good and satisfactory material in and upon said building, and that the work and materials, so far as the same were furnished by him, were not satisfactory to J. H. Walsh & Bro. the architects and builders named in said contract, to whom, by the express terms of said contract, said work and materials were to be satisfactory, to the great damage of the plaintiff, whereby a right of action hath accrued to the plaintiff against the

defendant upon the said bond to recover in respect of said damage."

The second count, "for a further breach of said bond," alleged that after entering upon the performance of said contract, said Lawrence "wrongfully and wilfully abandoned the performance of said contract" whereby a right of action had accrued upon said bond.

The third count, "for a further breach of said bond," alleged that the work specified in said contract, and in the accompanying specifications forming a part of said contract, was not completed and finished in seventy working days as stipulated in said contract, "whereby the plaintiff became entitled by way of liquidated damages to the sum of $50 for each and every day in excess of seventy working days (the said number of days so in excess amounting to 250 days), which said liquidated damages the said Lawrence had failed and refused to pay," whereby a right of action had accrued upon said bond.

The fourth count, "for a further breach of said bond," alleged that after said Lawrence abandoned said contract, notice thereof was thereupon given to said Surety Company by the plaintiff by registered letter, as required by the terms of said bond, and that thereupon the defendant assumed said contract and sublet the same for completon, but did not complete the same and left the same unfinished, whereby a right of action had accrued upon said bond.

The fifth count, "for a further breach of said bond," alleged that the defendant after assuming said contract as alleged in the fourth count, proceeded in the completion thereof in an unskilful and unworkmanlike manner, using inadequate and insufficient materials in a negligent way, and unreasonably delayed the work, so that it was not done in accordance with the specifications nor within the stipulated time, whereby a right of action had accrued upon said bond.

The declaration then alleged that as to each of said five counts, and each and all of the breaches of said bond therein mentioned, the plaintiff had performed all the conditions re-

quired of him in said contract and bond, and that by reason · of said breaches of said contract by Lawrence, and the breaches of said bond by the defendant, a right of action had accrued upon said bond to recover in respect of each and every breach set out in said five counts, and claimed $30,000 damages.

The defendant demurred to the declaration and to every count thereof, and this demurrer was overruled. We have fully outlined the structure of every count in this declaration, in order that the demurrer might be the better understood when considered.

A bill of particulars was then demanded and furnished, in which was itemized all the work and materials done and furnished to make the building conform to the contract, with the date of each item.

The defendant then pleaded sixteen pleas, some alleging breaches by the plaintiff of the covenants on his part in said contract, and of the conditions of the bond imposing obligations upon him, and others denying the breaches of said contract by Lawrence, and of said bond by the defendant, complained of in the declaration. Upon some of these pleas the plaintiff joined issue, and replied to others, and the defendant rejoining, joined issue upon these replications. The case went to trial before a jury, and a verdict was rendered for the plaintiff for $5,088.06, and judgment was entered thereon in proper form, from which both parties have appealed.

The plaintiff took three exceptions, two to the rulings of the Court upon motions to strike out certain testimony admitted subject to exception, and one to the rulings on the prayers; and the defendant also took three exceptions, two to rulings upon the evidence and one to the rulings on the prayers.

The plaintiff offered two prayers. The first, in substance instructed the jury that if they found certain enumerated facts, the plaintiff was entitled to recover such sum as the jury should find to be reasonably necessary to be expended in strengthening the first and second floors, and the back stair-

way; in temporarily covering and protecting the collapsed roof, and permanently restoring the same to conform to the contract; and also to make the first and second floors as completely fireproof as they would have been if the contract had been fully performed in every respect so far as the said first and second floors were concerned.

This prayer was granted. The second prayer asked an instruction that the plaintiff should recover, by way of additional damages, the sum of $50 for every day in excess of seventy working days occupied by Lawrence and the defendant upon said work, excluding from said seventy days all other working days during which the jury should find the work was delayed by the architects and builders of the plaintiff, from the time of the commencement of the work down to the time when the jury found the plaintiff took possession of the building, and this prayer was refused. We shall request the reporter to set these out in full.

The defendant offered twenty-eight prayers.

The 1st, 2nd, 3rd, 4th, 5th, 6th.and 7th were abandoned in this Court, having been refused below, and the 11th, 12th, 20th, 21st, 22d, 23rd, 26th, 27th and 28th were also refused. The 8th, 9th, 10th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 24th and 25th were granted. There were some special exceptions by the plaintiff to the granting of some of the defendant's prayers which will be noticed hereafter.

The first question arises upon the demurrer to the declaration.

The reference of the defendant in this Court to this question is contained in the following extract from its brief: "There are what purport to be five counts in the declaration, but in reality, there is one count only, and that is the first count. The remaining counts should have been held bad on the demurrer which was interposed. The first count is .complete in itself, but the damages recoverable thereunder, are in express terms limited to such as arose for defective materials and workmanship during the time Lawrence was on the job down to Aug. 11, 1906. We take it to be clear that

the remaining counts are fatally defective and should be tested as though the first count were bad on demurrer. Neither count subsequent to the first, states in itself a cause of action." This does not clearly point to any specific defects, and the only inference suggested is that the contract and bond should have been set out in each count. The plaintiff's brief however discusses some grounds taken by the defendant in the Court below which will be briefly referred to.

First however we will notice the plaintiff's contention that this demurrer is *joint* and not several, and must therefore be overruled if there is one good count, as we understand the defendant to concede there is, in the extract from his brief above. Such is the undoubted rule of pleading, but the exact language of this demurrer is, "to the plaintiff's declaration and to every count thereof." We should hold this to be *several,* as well as joint, if there were no express authority therefor, but the precise question has been decided in *Sanford* v. *Geddes,* 13 Ill. 329, in an opinion by JUDGE LYMAN TRUMBULL, one of the most distinguished Judges of that State. The language of that demurrer was as follows: "The said several counts of the said declaration are not sufficient in law, nor are either of said counts sufficient in law." The Court said: "Had separate demurrers been written out to each count it cannot be denied that some of them might have been sustained, and others overruled, as the counts, on examination, were found to be either good or bad. Why then should not one general demurrer, *made several to each of the counts,* be treated in the same way? We regard it as a commendable practice to avoid encumbering the record with useless papers, and can see no good reason why a party should not be permitted to make his demurrer several to each count, without writing out as many formal separate demurrers as there are counts in the declaration."

But we are of opinion each of the counts in the declaration before us is good. We are informed that it was objected below to the first count that it does not contain the specifications and drawings referred to in the contract. It was not neces-

sary it should contain them.   It was not even necessary to set
out the contract *in hæc verba,* or to set out the bond, or file a
copy of it.   1st *Sup. Enc. Pl. & Pr.,* 590.   *Bank of Tim-
monsville* v. *Fidelity Co.,* 120 Fed. Rep. 315; *Armstrong* v.
*Robinson,* 5 G. & J. 412, approved in *Neale* v. *Fowler,* 31
Md. 157.

In reference to the objection that none of the remaining
counts in themselves states a cause of action, it will be suffici-
ent to cite *Griswold* v. *Ins. Co.,* 3 Cowen, 97, in which it was
said that: "In declaring upon a contract which is sufficiently
stated in the first count, it need not be repeated in subsequent
counts in the same declaration; it is enough to declare it is
the same as set forth in the 1st count." As to the second count
we are informed it was contended below that it should have
negatived matters of defeasance afterwards set up in some of
the pleas filed.   But the authorities are otherwise.   *Booth* v.
*Comegys,* Minor, (Ala.) 210; *Mix* v. *Page,* 14 Conn. 329;
*Mason* v. *Montgomery,* Wright (Ohio), 722, in which it was
said that a party relying upon new matter must himself af-
firmatively bring it forward in pleading, and that a demurrer
will not introduce it upon the record; also *Romer* v. *Conter,*
53 Minn. 171, where the rule was applied to a suit on a bond
given to secure the performance of a building contract.

It was also objected below to the third count that it did not
designate with sufficient particularity the 250 days for which
liquidated damages were claimed, and to the fourth that it
did not state the date when Lawrence abandoned the contract,
and when notice thereof was given to the defendant.   But
these we think were matters of evidence.   1st *Poe's Pleading,*
sec. 550; *Ruby* v. *State,* 55 Md. 488.

We are told it was contended below that the fifth count was
bad for duplicity, in that it set forth two distinct causes of
action.   This, if true would be ground of demurrer.   *Milske*
v. *Steiner,* 103 Md. 250.   But we think only a single cause
of action is set forth in this count, viz, the failure to complete
the work properly within the prescribed time.   *Mr. Chitty,
Pleading,* Vol. 1, page 251, says: "Several distinct facts may

be comprised in the same pleading, if the different facts form together but one connected proposition;" and this is said to be the rule in 7th *Enc. Pl. & Pr.*, 238, citing *Wolfe* v. *Beecher Mfg. Co.*, 47 Conn. 233, where it is said: "An enumeration of various kinds of damage resulting from a single act, will not render the pleading duplicitous." We do not think this count is open to that objection, and we are of opinion that the demurrer was properly overruled.

The defendant's first exception was to the refusal to admit in evidence a report made by Mr. Keyser, an engineer, of an inspection made by him of this building in March, 1907. There was no authentication whatever of this paper. *Wigmore* in his work on *Evidence*, Vol. 3, sec. 2130, says: "A writing purporting to be of a certain authorship cannot go to the jury as *possibly* genuine, merely on the strength of this purport; there must be some evidence of the genuineness (or execution) of it." In *St. Louis Loan Co.* v. *Yantis*, 173 Ill. 321, where a printed statement of the number of shares of instalment stock issued was offered in evidence, the Court said: "In no way authenticated, we are aware of no rule of evidence that would justify its consideration by the Court." Moreover, that paper was nothing more than what Mr. Keyser *said* upon the subject. It was an unsworn statement, and no more admissible than his oral statement to the same effect. Even if supported by a mere voluntary affidavit, it would not have been raised above the grade of hearsay. *Patterson* v. *Md. Ins. Co.*, 3 H. & J. 71. There was no error in this ruling.

The defendant's second exception was to the refusal of the Court to strike out the testimony of the plaintiff Summers with reference to the provisions of the contract for the payment of $50 per day, in case of delay. This will be considered in connection with the prayers on both sides relating to liquidated damages.

The plaintiff's first bill of exceptions was to the refusal of the Court to strike out the blue prints marked "Defendant's Exhibits A., A 2, B, C, & D, and each of them," which had been admitted subject to exception, after having been previ-

ously twice refused admission. The plaintiff practically admitted in his brief that their admission worked no injury to him, and we need only say that we think they were properly admitted.

Plaintiff's second exception was to the ruling of the Court in striking out (1) Summers' testimony that he could have rented his old building from January 1, 1907, if he had gotten possession of the new building before that time, and Martien's testimony as to its rental value; and (2) Martien's testimony as to the rental value of the new building. We think the ruling as to the old building was correct, because he had leased the old building for three years ending February 29th, 1908, long before he contracted with Lawrence for the new building, and the rental value of the old building was not in issue in the case. The rental value of the new building stands upon different ground. The plaintiff was entitled either to liquidated damages, if the true construction of the contract provided for such, or if it did not, one element of damage was the loss of rental value of the new building while he was kept out of it by the fault of Lawrence or of the defendant. It was inconsistent, as we think, for the Court to rule as it did in this exception, that evidence of *that* rental value could not be received, and then to rule as it did on the prayers that liquidated damages could not be recovered. *Central Trust Co.* v. *Arctic Machine Co.,* 77 Md. 235. It will be seen when we come to consider the prayers that we think the error was in that ruling, and not in this exception.

Before taking up the prayers it will be necessary to refer to certain provisions of the contract and specifications.

Clause 1 of the contract requires the building to have a frontage of 49 feet 10 inches, conformably to the drawings and specifications thereto annexed.

Clause 2 requires the work to be satisfactory to the owners, architects and builders.

Clause 3 that the specifications and drawings shall co-operate.

Clause 9 that in case the work is not completed within 70

working days, the contractor shall pay. the owner $50 for every day in excess of 70 days occupied in the work.

Clause 10 that in case of completion in less than 70 working days the owner shall pay the contractor $50 for every day of said 70 days not occupied in said work.

Clause 11 that the contractor shall give bond in $30,000 for the faithful performance of every provision of said contract.

Clause 13, for payment of contract price in certain instalments at specified times, amounting to $10,900, and the balance $2,725, upon satisfactory completion of the whole work. There has been paid $9,300, and there remains unpaid $4,325, one of the questions now in dispute being whether this sum is now due and demandable by the surety in this case.

The specifications require "all work and material to comply in every respect with the building laws of the City of Baltimore and with the directions of the Inspector of Buildings, all of which are to be considered a part of the specifications and contract."

The drawings annexed to the contract are designated in the specifications, and were offered in evidence by the plaintiff below, but by agreement of counsel neither these drawings, nor those offered by the defendant and admitted ("A, A 2, B, C, & D") are embraced in the record, the agreement of counsel providing that any of these drawings might be used by either party at the hearing in this Court, and the drawings offered by the defendant as above designated were so used.

The specifications contain this provision: "Name separate price for construction of north side of building on reinforced concrete columns and girders *in place of wall* sufficient to add additional 15 feet in width to present building at any time; to have curtain wall of brick."

Here we may pause to observe that these specifications do not designate the location of this north girder otherwise than by describing it as "in place of north wall."

The curtain wall mentioned in the specifications is a 13-inch wall carrying no weight, and designed only to close the north side of the building, all the weight being carried on the columns, and the north girder, which takes the place of the wall.

The specifications provided that the first and fifth floors should carry 175 pounds, and the second, third and fourth floors, 225 pounds to the square foot, *"all to be with safety factor of four,"* which the testimony shows means that the floor should not break under less than four times the weight it is required to carry.

We will now turn to the prayers, and will take up first the defendant's twenty-seventh prayer, which seeks to discharge the surety from any liability on the bond on the ground of a material alteration in the plans and specifications and construction of the concrete work by reason of the alleged change in the location of the north girder.

It will be seen that through some error in preparing the record or some possible inadvertence in drawing the prayer, its language is very confused and difficult to understand, but we will assume that the jury understood it as presenting the proposition we have stated. The plaintiff specially excepted to this prayer upon the ground that there was no evidence legally sufficient to show that the original contractor moved this girder from the position indicated in the plans and specifications, or that because of said removal the plaintiff gained 200 square feet of floor space, or that the cost of said removal was about $200, and that the same was not included in the original contract, plans and specifications. This exception was sustained and the prayer was refused.

There was evidence showing that the architects required Lawrence to change the location of this girder from the centre of the columns where *he* had begun its construction, to the north side of the columns, and from the position *apparently* indicated for it, by the line drawn through the centre of the columns on the drawings, *B. & C. prepared by the contractor, after the execution of the contract* and the prepara-

tion of the plans which were annexed to the contract as a part thereof. But this does not tend to show that this was a change of location from its position as determined by the drawings and specifications annexed to the contract *which alone constitute the original and satisfactory source of proof,* and we have the uncontradicted evidence of the architects that no change was made in *these drawings or specifications; nor in the construction provided for by them,* and E. L. Walsh, who was the member of the architects' firm especially in charge of and familiar with these drawings, testified positively that these drawings did not show any location for this girder. Lawrence, about the time he commenced work, June 18th, 1906, or a little before, prepared his own working plans, which were submitted to the Building Inspector, approved by him, and lodged with him, and Lawrence testified that the drawings A, A2, B, C & D, were duplicates of *his* originals, but there was no proof that they were duplicates or accurate copies, or copies of any sort, of the architects' drawings annexed to the specifications.

Moreover the language of the specifications is, we think, in the absence of other proof, conclusive, as Walsh testifies, that this girder was designed by them to be located on the north side of these columns and to be flush with their north edge. It is perfectly manifest from these specifications, that if the same character of wall had been provided for the north side as for the other sides of this building, its outer edge would have coincided with the line of the outer edge of the columns actually provided for, since otherwise the building would not have had the required frontage of 49 feet 10 inches, and this follows from the very language of the specifications, "girders *in place of wall* sufficient to add 15 feet in width to present building, to have curtain wall of brick." The specifications declare that "all figures are to be taken in preference to measurement by scale." It is a general rule of construction that where words and figures are inconsistent, the words shall govern, and even if the architects' drawings had been shown to indicate by a mere line an apparent loca-

tion for this girder, that could not properly be held to control the clear language of the specifications. It should be observed that this girder was to be 10 inches wide by 28 inches deep, and that Lawrence's drawings do not attempt to show these dimensions drawn to scale, but merely indicate the girder by a single line. The approval of Lawrence's drawings by the Building Inspector indicated only his approval of the safety of the proposed structure and could not have the effect of substituting those drawings for the architects, or effecting a change in the location of this girder. This being our view of the testimony it is unnecessary to discuss the legal principles applicable to the effect upon a surety of an alteration in the principal's contract, or the cases cited by the defendant in support of this prayer. We must hold this prayer was correctly refused, and the special exception correctly sustained.

The defendant's 28th prayer asserts that if under the original plans and specifications, Lawrence was to erect a stairway between the first and second floors, and that this was omitted by Lawrence at the request of the architects, and that Lawrence was nevertheless paid therefor, and no notice in writing of said omission, or said payment, was given to the Surety Co. immediately after such payment, then the verdict must be for the defendant.

This prayer is founded upon the following term of the bond: "The said Surety shall be notified in writing of any act on the part of the principal or his agents or employees which may involve a loss for which said surety is responsible hereunder, immediately after the occurrence of such act shall have come to the knowledge of said obligee," or to any representative duly authorized by him as such. It is difficult to understand, how the omission of this stair-case, or the payment therefor, as if it had been constructed by Lawrence, could involve any loss to the surety, when the omission was at the plaintiff's request, and when the surety is credited in the bill of particulars with the payment therefor as part of the $1,600 paid Lawrence August 11, 1906, and when no

claim is made on account of the second payment to Walsh for putting the stair-case in. Without in any way withdrawing or modifying anything that has been heretofore held by us as to the strict right of a surety to stand upon the very terms of his contract, we do not think that doctrine can be invoked for the release of the defendant for the reason urged. See *Leghorn* v. *Nydell,* 39 Wash. 17; *Cochran* v. *Baker,* 34 Ore. 555.

By granting the defendant's 8th, 9th and 10th prayers, and refusing the plaintiff's second prayer the jury were instructed that there could be no recovery under the ninth clause of the contract relating to the payment of $50 per day for delays, thus holding that this stipulated sum was a penalty and not liquidated damages.

*Willson* v. *Mayor and City Council of Baltimore,* 83 Md. 203, is one of the latest cases in this Court upon that question. In that case JUDGE McSHERRY said: "This is one of the most difficult and perplexing inquiries encountered in the construction of written agreements. The solution of that, question depends, in a large measure at least, upon the particular facts and circumstances of each separate case * * * As just compensation for the injury done is the end which the law aims to reach, the intention of the parties, at the time the contract was entered into, is often, though not always, given weight. * * * and the measure of damages will be restricted to such as the evidence shows have been actually sustained, if the entire agreement, and the peculiar circumstances of the subject-matter of the contract indicate that the reason and the justice of the case require this to be done. * * * A stipulation to pay a specified sum upon the non-preformance of a contract is regarded as a penalty rather than as liquidated damages, if the intention of the parties as to its effect is at all doubtful or is of equivocal interpretation, * * * or where the agreement is certain and the damages for a breach thereof are easily and exactly ascertainable. Finally, the tendency of late years has been to regard the statements of parties as to liquidated damages in the light

of a penalty unless the contrary intention is unequivocally expressed, so that harsh provisions will be avoided and compensation alone will be awarded." The case then before the Court was a suit by Willson to recover a deposit of $500, which he had made in connection with a bid for some public work for the performance of which a bond was required. Failing, without fault on his part, to secure bond, the City re-advertised for bids and the contract was awarded at a much lower figure to another person, so that the City sustained no loss whatever. The form of bid required stipulated that "if the successful bidders entered into contract with bond without delay their checks will be returned as will those of unsuccessful bidders." Construing that provision the Court said: "It would be *unconscionable* for the City to retain the $500 as stipulated and liquidated damages for a technical breach which has occasioned no appreciable injury."

These utterances of the late distinguished Chief Judge of this Court are in accord with the views of the majority of the Courts of the country, and their application to the case before him evinced his sound and wise judgment. How shall they be applied to the case we now have before us?

In the latest case in this State, *Filston Farm* v. *Henderson,* 106 Md. 355, such a stipulation as in the present case, was held to provide liquidated damages. There they were by the contract so declared to be, but that is never alone conclusive. In 30th *Enc. Law,* 2 Ed., 1263, it is said to be the general rule that such a stipulation, unless the amount is grossly excessive, is treated as liquidated damages and not as a penalty regardless of its designation in the agreement. Of course it is understood, that such construction is deduced from the intention of the parties as disclosed by the *whole* agreement. In *Hall* v. *Crowley,* 5 Allen, 304, the agreement was as follows: "For each and every day's delay in the completion of said houses after December 1st, said Hall is to forfeit $5.00." The Court said: "There can be no doubt that the sum named in the contract is to be treated as liquidated, and as fixing the exact measure of compensation to

which the defendant should be entitled in case the plaintiff did not complete his contract within the stipulated time * * * The language of the contract as applied to the subject-matter is susceptible of no other reasonable construction. * * * Nor is it to be overlooked that the loss which would accrue to the owner would be difficult to prove and still more difficult to estimate in money. * * * In cases of this nature, where the intent of the parties is so clear, the use of the word *'forfeit'* in the clause providing for damages in case of breach, is not regarded as of much weight."

In *Ward* v. *Hudson River Building Co.,* 125 N. Y. 230, the contract provided for a lump sum to be paid by way of liquidated damages for failure to complete certain houses by a fixed time, the Court held the term "liquidated damages" is not controlling upon the question of construction, but also held that " where the parties have stipulated for a payment in liquidation of damages, which are in their nature uncertain and unascertainable with exactness, and may be dependent upon extrinsic considerations and circumstances, and the amount is not, on the face of the contract, out of all proportion to the probable loss, it will be treated as liquidated damages." ·

In *Texas and St. Louis R. R.* v. *Rust,* 19 Fed. Rep. 239, a stipulation for a payment of $1,000 per week for non-completion of a bridge was held a stipulation for liquidated damages. The Court observed that the stipulation was not for a large sum in gross, or for any mere technical breach, and that "the damages are graduated according to the time the delay continues, and are not excessive or unreasonable."

In *U. S.* v. *Bethlehem Steel Co.,* 205 U. S. 105, a party submitted different bids for work, the largest price being for the shortest time of delivery, and the Court said that "acceptance of the bid for the shorter time is evidence that the element of time is of essence, and a stipulated deduction of an amount per day equivalent to the difference between the long and short time for delivery is to be construed as liquidated damages, and not as a penalty, though the word penalty

may have been used in some portions of the contract;" and the Court cited *Sun Printing Assn.* v. *Moore,* 183 U. S. 642, for a full consideration of the present state of the law upon the subject.

In *Clydebank Eng. Co.* v. *Don Jose Ramos* [1905] Appeal Cases, N. S. 6, there was a contract to build four torpedo boats for the Spanish Government within certain dates, with a penalty for later delivery at the rate of £500 per week for each vessel.

It was held that the mere use of the word *penalty,* on one side, or *damages,* on the other, is not conclusive as to the rights of the parties. LORD HALSBURY said, speaking of the stipulation: "It was not intended merely as something *in tenorem;* both parties recognized the importance of time, and it is impossible to lay down any abstract rule as to what may be extravagant or unconscionable;" and the stipulation was held to be a stipulation for liquidated damages.

LORD DAVEY delivered a separate concurring opinion, citing *Lord Elphinston* v. *Monkland Iron Coal Co.,* 11 Appeal Cases, 332, in which LORD WATSON said: "When a single lump sum is made payable by way of compensation on the occurrence of one or more of several events, some of which may occasion serious and others but trifling damage, the presumption is that the parties intended the sum to be penal and subject to modification. The payments stipulated here are not of that character; they are made proportionate to the extent to which the respondent may fail to fulfil their obligations, and they are to bear interest from the date of the failure. I can find neither principle nor authority for holding that payments so adjusted by the contracting parties, with reference to the actual amount of damages, ought to be regarded as penalties." LORD DAVEY then proceeded to say: "Courts can only refuse to enforce performance of such an obligation when the payments specified could not possibly have formed a genuine pre-estimate of the creditor's possible or probable interest in the performance of the principal obligation."

The analogy between the present case and the case of the *Bethlehem Steel Co.,* in 205 U. S., *supra,* cannot escape observation.   In this case, the stipulated sum of $50 per day is not only charged *to the contractor* in event of delay beyond the seventy working days, but it is charged *against the owner in favor of the contractor,* in event of completion before the expiration of the seventy days, showing that both parties regarded time as of the essence.   Moreover, all that has been said in the cases cited as to the difficulty of proving the loss and estimating its money value is applicable to this case, in which the plaintiff was seeking new quarters for an established and growing business, the transfer of which was delayed by the failure to complete the new building according to contract.

Again, the same construction should surely be given to clause nine, which relates to delay in completion, as to clause ten, which relates to anticipation of completion.   There should be uniformity of construction and mutuality of application. If the contractor had completed the work in sixty-nine days, would he not have been clearly entitled to $50, and if he had completed it in sixty days, would he not have been clearly entitled to $500?   On the other hand, if he had occupied seventy-one days, would he not have been liable to the owner for $50, or if he had occupied eighty days would he not have been liable for $500?   We think he would, unless it can be said that $50 for one day is an unconscionable amount, and we do not think this can be contended.   If the rate per day is not excessive or unconscionable in itself, it cannot be made so by continued delay in performance.   From every point of view of this question we are forced to the conclusion that this stipulation was for liquidated damages, and that the learned Judge erred in refusing the plaintiff's second prayer and in granting the defendant's eighth, ninth and tenth prayers.

The defendant's twentieth prayer asked the Court to instruct the jury that it is conceded in this case that the sum of $4,325, being a balance of the contract price, is *due* and unpaid, and that $1,600 thereof bears interest from the time

the roof was on and complete and ready for slag roofing, and that the balance bears interest from the completion of the whole concrete work; but the prayer was refused. This prayer *assumes* that $4,325 was *due* to the plaintiff, whereas that was emphatically contested by the plaintiff. Under the contract, out of this balance, which was conceded to be *unpaid,* but denied to be *due,* $1,600 was due when the roof was on and complete and ready for slag roofing ,and the balance upon satisfactory completion of the whole work. The defendant's letter of January 30, 1907, admits the work was not then completed, and there is no evidence of its subsequent completion. Both the Walshes and Summers testified the work was not completed at the time they testified. Rejected prayers do not come within the scope of sec. 9 of Art. 5, and no special exception on the ground that the prayer assumes a fact is necessary in such case. *Mylander* v. *Beimschla,* 102 Md. 689. There was no error in the refusal of this prayer.

The defendant's fourteenth, fifteenth, seventeenth, eighteenth, nineteenth, twenty-fourth and twenty-fifth granted prayers were not argued and were apparently conceded, and we are of opinion they were correctly granted.

The defendant's eleventh and thirteenth prayers relate to the correctness of the tests applied to the first and second floors and to the roof. They both assume that the *primary* tests of these floors made were satisfactory and conclusive, and they ignore the safety factor of four, which by the express terms of the specifications was made an element of these tests. For these reasons we think the eleventh was correctly refused, and the thirteenth, which was granted, should have been refused. We also think the plaintiff's special exception to the thirteenth prayer on the ground there was no evidence legally sufficient to show that the shrinkage or faults in the concrete work were due to the application of tests not justified by the specifications should have been sustained.

The defendant's twelfth prayer was based upon a theory that the defects alleged in the beams of the first and second floors were due to the increase of cement in the beams and

slabs of the third, fourth and fifth floors as required by the Building Inspector and that consequently there could be no recovery for such defects in the beams of the first and second floors. The special exception to this prayer for want of legally sufficient evidence was properly sustained and the prayer properly refused.

The defendant's sixteenth (granted) prayer limits the recovery for reinforced steel work and fireproofing the same to the eleven beams which actually broke under the tests made. This was error for two reasons—first, because there was evidence that one of the main *girders,* as distinguished from the *beams,* was of bad material and required reinforcement; and, second, because there was evidence tending to show the necessity of general steel reinforcement to make the building sufficiently strong, and of fireproofing of this steel work to make the building fireproof, as required by the contract. Both these questions of fact should have been embraced in the prayer for the jury to pass upon.

The defendant's twenty-first prayer is objectionable upon the same ground we have sustained as urged against the twentieth prayer.

We have been referred to *Stehle* v. *United Surety Co.,* 107 Md. 470, in support of this prayer. In that case, the same clause here relied on was construed, and it was held that the amount due to the contractor at the date of the abandonment belonged to the surety, because of the contract of suretyship and by reason of subrogation. Stehle was surety for Jones, and he issued an attachment and laid it in the hands of the Maryland Electric Railway as garnishee of Jones. The garnishee admitted a certain amount to be *due* and payable by it, *and in that situation* the surety was held entitled. But here it is denied that any balance is *due,* and the prayer assumes that vital fact.

The defendant's twenty-second prayer was properly refused because it asserted that the defendant was entitled to charge the plaintiff with the reasonable cost and expense of the extra labor and material caused by the requirement that the steel

rods reinforcing the concrete should be increased in number and the slabs made thicker in the third, fourth and fifth floors, the proof being that the Building Inspector required this, whose requirements were by the specifications expressly declared to be a part of the *contract,* and were therefore taken into account in the contract price.

The defendant's twenty-third prayer asked an instruction that plaintiff should be held liable to the defendant for the cost of replacing two slabs and one beam in the basement, if the jury found their condemnation was not because of bad material furnished or work done by the contractor, "but for causes for which the plaintiff was responsible." There was evidence tending to show that plaintiff's agents and employees dumped piles of bricks upon the cement slabs of this basement while it was green and not fully set, and if this prayer had specifically referred to these acts of plaintiff's agents and employees, as disclosed in the evidence, we think it would assert a correct proposition, but as framed we think it was correctly refused.

The defendant's twenty-sixth prayer is subject to the same objections which we have said required the rejection of its sixteenth prayer.

The plaintiff's first prayer, which we have already referred to, fully and fairly presented the propositions it asserted, and we think it was properly granted.

For the reasons stated the judgment must be reversed.

> *Judgment reversed and cause remanded.*
> *The costs below to be paid by the United*
> *Surety Company. The costs of this*
> *appeal to be equally divided between*
> *the parties.*