1810.

Patterson vs Maryland Insurance Company.

PATTERSON VS. MARYLAND INSURANCE COMPANY.

JUNE.

APPEAL from *Baltimore* County Court. An action on the *case* was brought by the appellant, (the assured,) against the appellees, (the assurers,) on a *policy of insurance*, dated the 23d of October 1795, whereby the assured caused himself to be insured, lost or not lost, at and from *Baltimore* to the coast of *Africa*, with liberty of trading on the said coast, and at and from thence back to *Baltimore* again, upon the body, tackle, apparel, and other furniture of the schooner called *The Industry*. The declaration contained four counts—The *first* on a *Barratry* by the master and marines, whereby the vessel was wholly lost to the assured. The *second* on a *Barratry* by the master on the 1st January 1796, &c. The *third* for a capture by *pirates*, &c. The *fourth* for a capture by persons unknown, &c. Plea, the general issue. At the trial the plaintiff, (now appellant,) read in evidence to the jury the policy of insurance, dated the 23d of October 1795. He also gave in evidence, that at the time of making the policy, he was and still is a citizen of the *United States*, and then was the sole owner of the schooner *The Industry*, mentioned in the policy, an *American* vessel, regularly documented as such; and that the said schooner sailed from the port of *Baltimore* in good safety, on the voyage mentioned and described in the policy, on or about the 23d of October 1795, with *Nathaniel A. Ogden* on board as master, and *Thomas Buckner* as mate, for the said voyage, and a certain *Charles Leonard Le Baron* as supercargo for the said voyage. That on the 23d of May 1796, the schooner *The Industry* returned to *Baltimore*, and was reported and entered at the custom-house there, by the plaintiff, as coming from *Saint Bartholomew's* in the *West Indies*. That the said master, mate and supercargo, arrived in the said schooner at the port of *Baltimore*, together with one *Henry*

A voluntary affidavit ranks in equal grade with hearsay testimony in the scale of evidence, and in no case is received where better testimony can, from the nature of the case, be had. In an action on a policy of insurance, in order to prove the several matters alleged in the declaration, the plaintiff offered to read in evidence a protest made by the captain, & others, of the vessel on her return, before a notary public in Baltimore—Held, that the protest was merely a voluntary affidavit; he, except in those cases where a protest by *lex mercatoria*, or by statute, is authorized, has no authority to take a protest. The point of view in which the authority of a notary public is to be considered generally, relates to those commercial transactions or occurring in one country which are to be proved in another, or in which foreigners are interested, and the office derives its existence from the courtesy of one nation to another. And where he is to do certain acts by statute, the authority is limited to its designated object. The protest of the captain is not the best evidence the nature of the action admits of. It is not to be considered as a

deposition *de bene esse;* and it cannot be used as *prima facie* evidence only, which is equally as objectionable as if used as positive proof; for it would throw the *onus probandi* on the opposite party.

*Hains* and *John Mannel*, who left the port of *Baltimore* in the said vessel, as seamen, and returned in her as such, and who were the only seamen who sailed in the said schooner on the said voyage, and returned in her as aforesaid.    He also gave in evidence, that *Ogden* and *Buckner* have been dead about two years, and that *Hains* and *Mannel* went from the port of *Baltimore* in the month of November in the year 1796, to the eastern shore of this state, and cannot now be found or heard of in the port of *Baltimore*.    But offered no evidence to prove that the said mariners and supercargo were dead, or that any summons issued for them to testify in this cause, or that any steps have been taken by the plaintiff, previous to the empannelling of the jury in this cause, to ascertain their present residence, or to procure the benefit of their testimony.    He also gave in evidence, that on the 23d of May 1796, and until on and after the 26th day of the same month, *Thomas Donaldson* was a notary public, residing in the port of *Baltimore*, and duly authorised and commissioned.    He also offered in evidence, that it is, and for more than twenty years last past, has been the usage and custom of merchants, insurers, and others dealing in and making insurance in the port of *Baltimore*, in cases where they have adjusted their losses without suit, to receive the protests of the captures of vessels insured, as evidence of the matters therein stated, when losses are claimed, and for insurers, when called on for payment of such losses, to require the said protests to be produced, or their nonproduction to be accounted for by the claimants, before such losses are adjusted or paid, and not to call in question the truth of the facts stated in such protests, unless some strong ground of suspicion should appear.    He also gave in evidence, that it is usual in *Baltimore* for the captains of vessels arriving from other ports, to note their protests with a notary within twenty-four hours after their arrival respectively, which noting is done by informing the notary of the principal matters intended to be contained in such protests respectively, and intended to be thereby protested against.    But that it is not deemed essential that such noting should be done within twenty-four hours as aforesaid, or within any other particular time, and that protests are never objected to by insurers, or others, for not being noted within twenty-four hours, or any other particular time, provided the said pro-

tests be noted or made within a reasonable time after arrival. And thereupon the plaintiff, to prove the several matters contained in his declaration in this cause alleged, produced a *protest* made in the port of *Baltimore* on the 26th of *May* 1796, by *Ogden, Buckner, Hains* and *Mannel*, by *Thomas Donaldson* before mentioned, and by him duly certified under his notarial seal, and recorded in his office, and offered to read the said protest to the jury, for the purposes aforesaid, as the protest of the said master and mate. He also, for the purposes aforesaid, produced a *protest* made in the island of *Saint Bartholomew's*, in the *West Indies*, on the 26th day of *March* 1796, by *Ogden, Buckner, Hains*, and one *John Cockeny*, then a seaman on board of the schooner, before a notary public there, and duly certified by him under his notarial seal, and offered to read the last mentioned protest in evidence, for the purposes as aforesaid, as the protest of the master and mate. The defendants offered in evidence, that *Ogden* and *Buckner*, from the time of their arrival at the port of *Baltimore*, resided there for several years, and that the defendants had no knowledge of the protest of the 26th of *May* 1796, or of the matters therein contained, until and after the institution of this suit, and that the plaintiff, from the making of the policy of insurance, until the present day, hath constantly resided at *Baltimore*. The defendants objected to the reading of the protest of the 26th of *May* 1796, to the jury. And the court, (*Nicholson*, Ch. J. and *Hollingsworth*, A. J) sustained the objection. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at the last term before CHASE, Ch. J. GANTT, and EARLE, J.

*Martin* and *Harper*, for the Appellant, contended, that as the master and mate were both dead, the protests made by them, and the seamen, ought to have been received in evidence upon common law principles, as the seamen were transient characters, and it was not known where they were to be found. They cited *Peake's Evid.* 14, 15; and *Bryden vs. Taylor*, 2 Harr. & Johns. 396.

*W. Dorsey*, for the Appellees. The protest of a captain can only be read in evidence to invalidate his testimony;

1810.

Patterson
vs
Maryland Insurance Company.

1810.

Patterson
vs
Maryland Insu-
rance Company.

it is not evidence *per se.* He cited *Peake's Evid.* 74. *Senat vs. Porter,* 5 *T. R.* 158. *Christian vs. Coombe,* 2 *Esp. Rep.* 489. *Ritchette vs. Stewart,* 1 *Dall. Rep.* 317. *Boyce vs. Moore,* 2 *Dall Rep.* 196; and *Walsh vs. Gilmor,* (on appeal in this court.)

. *Curia adv. vult.*

At the present term the opinion of the court was deli-vered by

EARLE, J. A voluntary affidavit ranks in equal grade with hearsay testimony in the scale of evidence, and in no case is received where better testimony can, from the nature of the case, be had.

The protest of the captain was merely a voluntary affi-davit, and a notary public, except in those cases where a protest by the *lex mercatoria,* as in cases of foreign bills, or by statute, as the act of 1785, *ch.* 38, statute 9 & 10 *William* III, ch. 17, 3 & 4 *Ann,* ch. 9, in case of damages on inland bills and notes, has no authority to take a pro-test. The point of view in which the authority of this of-ficer is to be considered *generally,* relates to those com-mercial transactions occurring in one country which are to be proved in another, or in which foreigners are interested; and the office derives its existence from the courtesy of one nation to another; and where he is to do certain acts by statute, the authority is limited to its designated object.

At common law, the best evidence must be had the na-ture of the transaction admits of. This claim is founded on a loss at sea, in a trading voyage. The captain's pro-test, before a notary, is produced as evidence of the loss, and the transaction is of late occurrence. Part of the crew are stated to have been residents of the eastern shore, to have returned in the vessel, and to have remained for some-time after in *Baltimore.* Those persons were not search-ed for, and it does not appear that they had left the state, and could not be found. Therefore, as those persons can-not be presumed to be out of the reach of the process of the court, the plaintiff should have produced them, for they must be supposed to be equally cognizant of facts happen-ing on board the vessel on her voyage.

Besides, a party is entitled to cross examine a witness, and it is a general rule, that without giving him an opportu-nity to do so, his deposition shall not be evidence. In this

case there was no opportunity, and on that ground the protest was incompetent. It is true that in some few cases similar protests have been read in evidence, but it has been to impeach the testimony of the protesters, and not to dispense with their parol testimony, or that of others, or of other proof.

This protest is not to be considered as a deposition *de bene esse.* It differs in two essential particulars; for first, depositions *de bene esse* are taken by some court, or by an express authority derived therefrom, or under our acts of assembly to perpetuate evidence; and secondly, they are always taken upon notice given to the adverse party, if practicable.

By the law of merchants, the captain must protest, on arriving at a port, against damages happening in a voyage thereto, but such protest is not evidence to charge the underwriters upon their policy. It is to protect the captain from his liability, and in such cases some others of the crew must join in the protest; and the reason is, that the captain may thus perpetuate that evidence which may be necessary to exonerate him from personal responsibility, as the crew, being persons of no fixed residence, and liable to more than ordinary casualties, their testimony is therefore more necessary to be taken, and is more liable to be lost.

As to using this protest as *prima facie* evidence only, it is equally as objectionable as if used as positive proof. For the purpose for which it was produced in this case, as in all others, throws the *onus probandi* upon the adverse person, and therefore, if allowed as evidence on that score, it established the cause of action unless contradicted. For *prima facie* evidence is sufficient, if not destroyed by other proof, as a note is *prima facie* evidence of a consideration, and throws the *onus probandi* on the opposite party.

The court affirm the judgment of the court below, with costs to the appellees.

CHASE, Ch. J. dissenting from the opinion of the court delivered the following opinion: The copy of a protest is not evidence *per se*; but under certain limitations and restrictions is admissible. It is evidence, if the captain, and those who signed it, and whose depositions are offered to be read, are dead, or out of the reach of the process of the

1810.

Patterson
vs
Maryland Insu-
rance Company.

court. It is evidence to impeach the credit of the captain, and those who have signed it, when examined in relation to the facts and circumstances detailed in it, without laying any foundation for introducing it, in the same manner that a deposition is evidence to impeach the credit of a witness when examined in court, by showing he is inconsistent, or has contradicted himself. The credit, the protest is entitled to, must be determined by the jury under all circumstances and the evidence in the case.

A deposition legally taken is not evidence *per se*, and cannot be admitted without showing the death of the deponent, or his not being amenable to the process of the court. This case is not distinguishable on principle from the ordinary case of receiving depositions in evidence; for the protest is taken by a public officer authorised to take it, and whose office and authority are recognized by the courtesy of nations.

The usage of trade and general utility, from necessity, require the admission of this kind of testimony, subject to the restrictions already mentioned.

It would be to little purpose to allow of protests, in commercial transactions, to be made on oath before a notary public, and to be by him recorded, if copies of such protests cannot legally be received as evidence in those cases in which the persons who made the protests are dead, or not amenable to the process of the court.

Although the evidence of seafaring persons, and others, may be perpetuated in the manner the acts of assembly have prescribed, those provisions do not exclude this kind of testimony, but must be considered as supplying additional means of proof.

The office of notary is an office of public notoriety; and acting under the solemnity of an oath, his acts are recognized by the courtesy of nations, and considered as records, with the view of furnishing evidence in those cases to which his acts refer.

In this case it is admitted by the counsel, that the protest was made in convenient time, and it appears to have been made at the proper place—the port of destination, and where the parties concerned in interest resided at the time.

It is proved in the case, that the captain and mate, whose testimony was objected to, were dead at the time.

This kind of proof is not conclusive, but is *prima facie* evidence, and may be counteracted and repelled by other testimony; and as the credit of it must be determined by the jury, I cannot see any inconveniencies attending the admission of it, equal to those which will result from its rejection. I think it is the safest way to allow it to go to the jury; and therefore am of opinion that the judgment of the court below ought to be reversed.

JUDGMENT AFFIRMED.