AARON *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.
(Two Appeals in One Record)

[No. 167, October Term, 1954.]

402

*Decided June 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Jacob D. Hornstein,* with whom were *Howard L. Aaron* and *Albert G. Aaron* on the brief, for the appellant.

*Francis J. Valle, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the Mayor and City Council of Baltimore.

*Juanita Jackson Mitchell* for Lillie M. Jackson and Florence L. Snowden.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court reversing two decisions of the Board of Municipal and Zoning Appeals, (the Board).

On February 27, 1953, the appellant, Samuel J. Aaron, purchased the property at 1128 Druid Hill Avenue in Baltimore from one Ulysses Gray. Previous to March 31, 1953, in order to renovate and modernize the property, the appellant filed an application with the Buildings Inspection Engineer as a non-conforming use to use the front of the basement at 1128 Druid Hill Avenue as a retail store and to house four families in the building. This application was disapproved by the Buildings Inspection Engineer. Appellant then filed an appeal with the Board. It is admitted that the area was not such as to allow occupancy by four families under the zoning ordinance. There was sufficient area for three family occupancy. Ordinance 1247 of Baltimore City, approved March 30, 1931, provided in Paragraph 28, Section J, as follows: "Notwithstanding other provisions of this ordinance pertaining to the number of families per acre, nothing contained in this ordinance shall be construed to interfere with or restrict the number of families occupying buldings at the time of the passage of this ordinance." There was no substantial change in this provision in revised Ordinance 711, Section 31K, approved May 21, 1953.

A hearing was held by the Board on this appeal on March 31, 1953, and on April 2, 1953, the Board passed a resolution denying appellant's application. Appellant then filed an appeal from the decision of the Board to the Baltimore City Court. On May 11, 1953, the Baltimore City Court passed an order remanding the case to the Board with instructions to take additional testimony, after due notice to all the parties in interest, and to render its decision. A second hearing was held on the

remand by the Board on June 2, 1953. Additional testimony was taken. No protestants appeared at that hearing. The Board on June 11, 1953, passed a resolution reversing its action of April 2, 1953, and approving the application. It developed that the Board had failed to give notice to the original protestants of the hearing held on June 2, 1953, and this fact was brought to the attention of the City Solicitor of Baltimore. Thereupon, as a result of a petition filed by the City, the Baltimore City Court on July 15, 1953, again remanded the case to the Board with instructions to take additional testimony and evidence, after giving notice to all parties in interest. A third hearing was held before the Board on September 8, 1953, at which hearing protestants appeared. As a result of that hearing on September 10, 1953, the Board passed a resolution reaffirming its approval of appellant's application and finding that a non-conforming use had been established for four family occupancy of the premises before March 30, 1931. Appeals were then taken by the protestants to the Baltimore City Court from the orders of the Board of June 11, 1953, and September 10, 1953, granting the application. A hearing was held before Judge Herman M. Moser of the Baltimore City Court on November 13, 1953, at which hearing the testimony before the Board was considered and additional testimony was taken. As a result of that hearing on December 16, 1953, Judge Moser signed a decree reversing the decision of the Board dated September 10, 1953, which reaffirmed its decision dated June 11, 1953, and denying the applications for the permit to house four families at 1128 Druid Hill Avenue. After further proceedings, not here pertinent, an appeal was taken to this Court.

In the briefs in this Court an attack was made on the statutory authority of the Baltimore City Court to remand the case to the Board for the taking of additional testimony. This point was abandoned in argument in this Court and it was agreed by all the parties that the Baltimore City Court had jurisdiction to pass the orders appealed from.

The State Zoning Enabling Act, Code, 1951, Article 66B, Section 7, as amended by Chapter 696, Section 3, of the Acts of 1953, provides that any person aggrieved by any decision of the Board may present to a court of record a petition setting forth that such decision is illegal in whole or in part and specifying the grounds of the illegality. The court, among other things, may reverse or affirm, wholly or partly, or may modify the decision brought up for review. The Baltimore City Zoning Ordinance, supra, Sec. 40, repeats the authorization and designates the Baltimore City Court as the court of record. It is well settled by many decisions in this State that the court will not substitute its discretion for that of the Board in zoning cases. The duty of the Board is to exercise the discretion of experts. The court, although it may not arrive at the same conclusion, will not disturb a decision of the Board on review, if the Board has complied with all legal requirements of notice and hearing and the record shows substantial evidence to sustain the finding. The decision of the Board here is reviewable by the Baltimore City Court and by this Court on appeal, not only when there has been an erroneous interpretation of the law but also where there has been a finding without substantial evidence to sustain it. It is arbitrary and unlawful for the Board to make an essential finding without supporting evidence. *Heath v. Mayor & City Council of Baltimore*, 187 Md. 296, 304, 49 A. 2d 799; *Mayor & City Council of Baltimore v. Biermann*, 187 Md. 514, 521, 50 A. 2d 804; *Hare v. City of Baltimore*, 200 Md. 477, 483, 90 A. 2d 217; *City of Baltimore v. Weinberg*, 204 Md. 257, 261, 103 A. 2d 567; *Oursler v. Board of Zoning Appeals*, 204 Md. 397, 404, 104 A. 2d 568.

The question, therefore, for our decision is whether the finding of the Board was without substantial evidence to sustain its finding that the property at 1128 Druid Hill Avenue was occupied by four families before March 30, 1931, the date of the adoption of the original Zoning Ordinance.

Previous to the revision of Ordinance 1247 and the adoption of Ordinance 711 on May 21, 1953, "family" had not been defined in the Zoning Ordinance. By Ordinance 711, *supra,* Section 48(v), a family is defined as "A person living alone, or two or more persons living together as a housekeeping unit, with separate identity from other persons or groups in the same structure, having cooking facilities as a part of the area designated for his or their use. * * *'' In the case of *Suwalski v. Mayor & City Council of Baltimore,* decided in Circuit Court No. 2 of Baltimore City on April 22, 1948, Judge Sherbow adopted the definition of "family" from *Black's Law Dictionary,* Third Edition, page 752, which defines a "family" as "a collective body of persons who live in one house * * * and under one head or management (thereby including domestic servants, lodgers, boarders, guests, etc.)." He also adopted the definition from *Webster's New International Dictionary,* Second Edition, Unabridged, 1936, page 916, which gives one of the definitions of "family" as "the body of persons who live in one house, and under one head or manager; a household, including parents, children, and servants, and, as the case may be, lodgers or boarders." Judge Sherbow there concluded that in determining a family "the real test is whether they constitute a separate household maintaining separate housekeeping facilities." He there concluded that if one takes in roomers or boarders, who do not have separate housekeeping facilities, such roomers or boarders do not constitute a "family". That case was not appealed to this Court.

At the hearing before the Board on March 31, 1953, the appellant testified that when he bought the property in 1953 there were four families living in the house and it was then registered with the O.P.A. for four families. Of course, registration with the O.P.A. did not exist until long after 1931. Mr. Arthur N. Rogers, the real estate agent, who sold the property for the Grays to the appellant, testified that Mrs. Gray was a personal friend of his and that he went to the house once or twice a week before

1931. At that time there were two families on the second floor, one family on the third floor and the Gray family on the first floor. The Grays also used the basement. There was one bathroom in the house and there was a complete kitchen with a stove and sink in the basement which is still there. He said Mrs. Gray died in November, 1952, and that Mr. Gray was living in New Jersey with his daughter. Four witnesses, including Mrs. Snowden, testifying in opposition to the application, said that the property had never been occupied by four separate families but that the Grays merely rented furnished rooms to various roomers, who also used Mrs. Gray's kitchen. As a result of that hearing the Board found that the testimony was conflicting as to the previous occupancy of the premises and not sufficient to establish the occupancy as a four family house at the time of the passage of the Zoning Ordinance. At the second hearing before the Board on June 2, 1953, when no protestants appeared, the appellant withdrew that part of the application asking for permission for the store in the basement, but continued his application for the four apartments. The only additional testimony there offered, which was not offered at the first hearing, were records showing that non-conforming uses had been established for four other properties on Druid Hill Avenue. There was also produced an affidavit from Ulysses Gray, the person from whom appellant bought the property at 1128 Druid Hill Avenue. In that affidavit Mr. Gray stated that he was 86 years of age and living at Asbury Park, New Jersey. He stated therein that when he first bought the property in 1919 it had living quarters in the basement, with plumbing, a kitchen and a sink. Sometime later sanitary sewerage was put in the basement and plumbing was put in the house. On the first floor there were three rooms with a kitchen in one of the rooms. On the second floor there were three rooms, and on the third floor there were three rooms and a bath. Prior to 1931 the property was rented by him to three other families and he and his wife also lived there. These families did their own

cooking in each apartment. He named the families living in the house prior to 1931 as Mrs. Stella Wood and her sister; Mr. and Mrs. Eugene Williams and sons; Mrs. Parsons; Mrs. Brown; Mr. and Mrs. John Smith; and his own family. He does not state that all of these people lived there at the same time before 1931, but merely that he rented to them before 1931. As a result of that second hearing, of which no protestants were notified, the Board found that the building in question has been occupied as a four family dwelling since prior to March 30, 1931, and approved the application.

At the third hearing on September 8, 1953, no additional testimony was offered by the appellant. However, a number of protestants testified that at no time prior to March 30, 1931, had four families resided at 1128 Druid Hill Avenue. It was occupied by the Grays, who rented rooms for a livelihood, mainly to male roomers and only one or two other persons besides Mrs. Gray used the cooking privileges. The person designated in Mr. Gary's affidavit as Mrs. Eugene Williams identified herself as Mrs. Bertha Williamson and said she first moved into the premises in 1935. At that time the persons living in the house beside herself, her husband and two children were: Mrs. Harris, who "worked out"; Mrs. Parsons, who is now dead; and the Grays. At that time none of the house was being used for apartments. Mrs. Gray rented to roomers. Mrs. Williamson had the cooking privileges in the kitchen located in the basement and rented two rooms. This was the only kitchen in the house. There was only one bathroom in the house. She lived with Mrs. Gray for thirteen years. Mrs. Stella Harris identified herself as the Mrs. Stella Wood, mentioned in Mr. Gray's affidavit. She said she moved in the house in 1940, had one room, and lived there until about five months previous to the hearing. She further testified that none of the other persons in the house cooked in their rooms and she saw none of them cooking in the kitchen as they "worked out". Mrs. Gray did not allow the tenants to cook in their rooms. Mr. and

Mrs. John Smith, who lived there then, did not cook in their room. She said she worked from seven in the morning until late at night and that no one cooked in the kitchen but Mrs. Gray. After she returned from work she cooked in the kitchen for Mrs. Gray when she was sick. As a result of this third hearing the Board on September 10, 1953, again found as a fact that a non-conforming use had been established for four family occupancy in the premises before March 30, 1931, and reaffirmed its decision of June 11, 1953.

At the hearing on appeal before Judge Moser in the Baltimore City Court additional testimony was there offered consisting in part of the report of the Police Commissioner, dated July 17, 1931, and turned over to the Zoning Commissioner. That report disclosed that at that time "1128 Druid Hill Avenue was a one-family dwelling." Judge Moser reversed the Board and denied the applications.

In *Knox v. City of Baltimore,* 180 Md. 88, 23 A. 2d 15, in spite of testimony that a vacant lot had been used for the storage of building materials and tools to establish a non-conforming use, this Court affirmed the finding of the trial court and the Board that the only use consisted of dumping cinders, old bricks, and mortar on the lot for the purpose of filling it in, and held that a non-conforming business use had not been established. In *Colati v. Jirout,* 186 Md. 652, 47 A. 2d 613, the Baltimore City Court reversed the Board in the granting of a permit to extend a non-conforming use. The Baltimore City Court was affirmed on appeal. In *Mayor & City Council of Baltimore v. Shapiro,* 187 Md. 623, 51 A. 2d 273, the Board found that a use did not exist for the dismantling of used cars. On appeal the Baltimore City Court reversed the finding of the Board. This Court reversed the Baltimore City Court on appeal on the ground that the finding of the Board was supported by substantial evidence. In *City of Baltimore v. Weinberg, supra,* the Board denied a non-conforming use for the storage of hardware, sheet rock, nails and cement. On appeal the

Baltimore City Court found that a non-conforming use existed and reversed the Board. On appeal this Court affirmed the order of the Baltimore City Court, finding that the decision of the Board was so far contrary to the substantial weight of the evidence as to be arbitrary and unreasonable.

In the instant case the Board, at the first hearing, found that there was not sufficient evidence to establish the occupancy as a four family house at the time of the passage of the Zoning Ordinance on March 30, 1931. We find no additional evidence in the second and third hearings before the Board and before the Baltimore City Court to substantiate such non-conforming use. The evidence offered at the second hearing showing that four other properties on Druid Hill Avenue had such non-conforming use did not affect the property here involved. The only remaining evidence is the affidavit from Ulysses Gray. It is said in 32 C. J. S. page 1075: "Affidavits when admissible as a general rule are only *prima facie* evidence, and they are not conclusive of the facts stated therein even though not contradicted by counter-affidavits. Indeed, ex parte affidavits are commonly regarded as weak evidence, to be received with caution, and not to be used where better evidence is obtainable." *Bard v. Bard*, 279 Ky. 683, 132 S. W. 2d 44; *Griffin v. Tomlinson*, 159 Va. 161, 165 S. E. 374; *Germain v. Raad*, 297 Mass. 73, 8 N. E. 2d 355; *Thomson Spot Welder Co. v. Ford Motor Co.*, D. C. Mich., 268 F. 836, affirmed, C. C. A., 281 F. 680, certiorari granted, 260 U. S. 718, 43 S. Ct. 96, 67 L. Ed. 479, affirmed, 265 U. S. 445, 44 S. Ct. 533, 68 L. Ed. 1098; *Tennant v. Divine*, 24 W. Va. 387. It was said by this Court in *Patterson v. Maryland Ins. Co.*, 3 H. & J. 71, 74, 5 Am. Dec. 419: "A voluntary affidavit ranks in equal grade with hearsay testimony in the scale of evidence, and in no case is received where better testimony can, from the nature of the case, be had." It was said in *United Surety Co. v. Summers*, 110 Md. 95, 110, 72 A. 775, that a mere voluntary affidavit is not raised above the grade of hearsay.

As stated herein, the person referred to as Mrs. Eugene Williams, stated that she did not move into the premises until 1935, and that none of the house was used as apartments but was rented to roomers, most of whom "worked out". The person identified as Mrs. Stella Wood in the affidavit testified that she moved into the property in 1940, that she had lived in one room, that all of the tenants were mere roomers, that none of them were allowed to cook in their rooms, and that she saw none of them cooking in the kitchen. There is no evidence other than the affidavit of Mr. Gray that Mrs. Parsons, Mrs. Brown, and the John Smiths lived there before 1931. There never was more than one bathroom in the house. Although no definition of family was adopted in the original Zoning Ordinance, whatever definition is relied on here would not lead a reasonable person to believe that the affidavit of Ulysses Gray established the fact that four families were living in the premises before March 30, 1931. There was, therefore, no substantial evidence to add to the finding of the Board in the first hearing and, therefore, its decisions in the second and third hearings were arbitrary and without substantial evidence to support them and were properly reversed by the trial judge. Furthermore, as above stated, the police report offered in the Baltimore City Court disclosed that on July 17, 1931, the premises here involved was a one family dwelling. *City of Baltimore v. Weinberg, supra,* page 263. The order of the Baltimore City Court will be affirmed.

*Order affirmed, with costs.*