## MAYOR AND CITY COUNCIL OF BALTIMORE v. FOSTER & KLEISER

[Nos. 1060 and 1061, September Term, 1979.]

*Decided July 10, 1980.*

The cause was argued before THOMPSON, MELVIN and LISS, JJ.

*John N. Spector, Assistant City Solicitor,* with whom were *Benjamin L. Brown, City Solicitor, William Hughes, Associate City Solicitor,* and *Sandra R. Gutman, Assistant City Solicitor,* on the brief, for appellant.

*Richard T. Rombro,* with whom were *Wartzman, Rombro, Rudd & Omansky, P.A.* on the brief, for appellee.

MELVIN, J., delivered the opinion of the Court.

PER CURIAM

The Mayor and City Council of Baltimore appeals from a

judgment of the Baltimore City Court that reversed decisions of the Board of Municipal and Zoning Appeals denying the appellees' applications to erect three large outdoor advertising signs at two locations in Baltimore City.

For the reasons fully set forth in the attached written opinion of the Baltimore City Court (Wilner, J.), which we adopt as the opinion of this Court, the judgment below is affirmed.

*Judgment affirmed; costs to paid by appellant.*

## MEMORANDUM OPINION

On October 13, 1978, Appellant, Foster & Kleiser, applied to the Board of Municipal and Zoning Appeals for a permit to erect one 14' x 48' double faced illuminated sign on top of a two and one-half story building at 820 North Front Street. This location is in an M-2-3 zoning district; and, pursuant to City Code, Article 30, § 10.0-3c, the proposed sign is permitted as a conditional use in such a zone, if approved by the Board.

On January 30, 1979, Appellant applied to the Board for a permit to erect two 12' x 25' signs at a site on the south side of Terminal Street, some 128' east of Fallsway. This is also in an M-2-3 zone, and the proposed signs are permitted as a conditional use, if approved by the Board.

On January 23, 1979, the Board disapproved the application for Front Street; and on April 24, 1979, it disapproved the application for Terminal Street. These appeals, which involve common points of law, followed. For the reasons described herein, the Resolutions adopted by the Board disapproving these two applications will be reversed.

In each instance, the proposed signs would be within 660 feet, but not closer than 100 feet, to the nearest right-of-way of the Jones Falls Expressway. The Front Street sign would show primarily to both northbound and southbound traffic on Fallsway, a public highway in Baltimore City that, at

that point, runs essentially parallel to the Jones Falls Expressway. There was some evidence before the Board that the sign could, if erected, be seen from the Expressway. The Terminal Street sign would face eastbound traffic on East Centre and Terminal Streets, although there was some evidence that it too would be visible from the Expressway.

In each case, the City Department of Transit and Traffic opposed the application, pointing out that placement of the sign within 660 feet of the Expressway right-of-way would be in violation of Md. Annot. Code, Transportation Article, §§ 8-741 and 8-742. No particular traffic hazards were suggested by the Department by reason of the signs' visibility from the Expressway; its opposition was based entirely upon its belief that those sections of State law forbid the proposed erection of the signs. The Court will deal with that issue first.

Title 8 of the Transportation Article deals with highways; Subtitle 7 thereof concerns the regulation of outdoor advertising along highways. See § 8-702 (a). Part V of Subtitle 7, comprising §§ 8-739 through 8-744, pertains especially to outdoor signs along expressways. The term "expressway" is defined in § 8-101 (g) and clearly includes the Jones Falls Expressway.

Section 8-740 (a) sets forth the scope of Part V of Subtitle 7. It says that Part V regulates the erection and maintenance of an outdoor sign "along or near an expressway" if, *inter alia,* the sign is "660 feet or less from the nearest edge of the right-of-way of the expressway..." Section 8-741 states:

"A person may not use his property or allow his property to be used by any other person for the erection or maintenance of any outdoor sign along or near any expressway, unless the sign is:

"(1) In an urban area; and

"(2) More than 660 feet from the nearest edge of the right-of-way of the expressway."

Section 8-742 provides certain exceptions from this

prohibition, however. As amended in 1977, it states, in relevant part, that nothing in Part V of Subtitle 7 prohibits the erection or maintenance of "[a]ny outdoor sign along a highway that is not an expressway, even if the highway runs parallel or partially parallel to an expressway, if the sign faces that highway." The term "highway" is defined in § 8-101 (h). That definition, together with the definitions of "road" and "street" in § 8-101 (n) and (r), makes clear that these three terms mean the same thing and that "highway" includes any public street or road. Thus, Fallsway, Terminal Street, Centre Street and Front Street are highways for purposes of §§ 8-741 and 8-742.

The evidence before the Board in each of these two cases was clear and uncontradicted that the signs in question, though without 660 feet of the expressway, would be "along" and indeed facing "a highway that is not an expressway" in an urban area. Accordingly, their erection and maintenance, by virtue of the clear wording of § 8-742 (3), is not prohibited by § 8-741. The relevant statute with respect to required setback from expressways is City Code, Article 30, § 10.0-1b, which prohibits a general advertising sign from being erected with 100 feet of the nearest right-of-way line of an expressway. From the evidence presented to the Board, it seems clear that the proposed signs in these two cases are not in violation of that ordinance.

There thus being no statutory prohibition to the erection of the signs, the question then becomes whether there was substantial evidence to support the findings and conclusions of the Board. The standard of review in that regard has been set forth a number of times by the Court of Appeals. In *Aaron v. City of Baltimore,* 207 Md. 401, 406 (1955), the Court stated:

> "It is well settled by many decisions in this State that the court will not substitute its discretion for that of the Board in zoning cases. The duty of the Board is to exercise the discretion of experts. The court, although it may not arrive at the same conclusion, will not disturb a decision of the Board on review, if the Board has complied with all legal

requirements of notice and hearing and the record shows substantial evidence to sustain the finding."

As noted, a billboard of the type proposed here is permitted under the applicable zoning ordinance at the locations requested, as a conditional use. In *Gilmore v. Mayor and City Council,* 205 Md. 557, 564 (1954), the Court, after reviewing two earlier cases, stated:

"These cases recognize first, the proposition that an applicant for a billboard in a first or second commercial use district, or industrial use district, is entitled to a permit unless the Board finds from the evidence produced before it, or on investigation, that the proposed use would endanger the public health, safety, security or morals; and, second, that the action of the Board, affirmative or negative, is entitled to such respect by the courts that it will be set aside only if the attacker meets 'the heavy burden of overcoming the presumption of constitutionality of legislative action' by showing that the action of the Board in the exercise of its original jurisdiction was arbitrary, capricious or illegal." [1]

In that context — against that standard — we look to the findings of the Board in these two cases and the evidence, if any, in support of them. The Board's findings are set forth in the Resolutions that it adopted in the respective cases.

In each case, the Board concluded that the proposed sign was permitted as a conditional use. In the Front Street case, the Board's findings were stated as follows:

"The Board, after having given due regard and consideration to the nature and condition of the adjacent uses and structures and the facts in this case, finds that in view of the proposed and existing committment (sic) to up-grade this neighborhood

---

1. As the *Aaron* Court pointed out, 207 Md. at 406, "[i]t is arbitrary and unlawful for the Board to make an essential finding without supporting evidence"; and that, of course, makes the question of evidentiary sufficiency a proper one for judicial review.

and the vast expenditure which has been made and will be made to develop this area, that it should not exercise its discretion so as to approve a paint bulletin on this site. The Board finds, as a fact, that the bulletin would adversely affect the area and there is no compelling justification to permit the erection of this paint sign.

"With due consideration to the guides and standards set forth in Sections 11.0-5a and 11.0-5c of the Zoning Ordinance and to the reports of the several City departments as required by the Zoning Ordinance, the Board finds that the proposed panel would menace and endanger the public health, security, general welfare and morals."

The evidence before the Board, from which these findings were drawn, consisted of the following:

(1) Communication from the City Fire Department expressing no objection to the proposed sign;

(2) Letter from the City Department of Transit and Traffic opposing the sign solely by virtue of its erroneous interpretation of Transportation article, §§ 8-741 and 8-742. No specific traffic hazard was cited;

(4) Letter from the City Department of Planning asserting that the sign would be visible from the Jones Falls Expressway, from Fallsway, from Orleans Street, and from the Jonestown, Oldtown, and Mt. Vernon renewal areas. It opposed the sign because it believed the overall height to be "excessive" and because the Department "further feels that a general advertising sign in this location could have an adverse affect (sic) on the surrounding renewal areas." No details as to the nature of this "adverse" effect were given.

(5) Testimony of Theodore Rosenburg, representing the Mt. Vernon Belvedere Improvement Association and the Twin Oaks Association, to the effect that the sign would be visible from the Mt. Vernon area and that a good deal of commercial investment and restoration is planned for that area. Mr. Rosenburg conceded that "I have not been told specifically by any investor that that particular sign will definitely stop him from investing money...";

(6) Testimony of James Lasser to the effect that some plans for the construction of luxury housing units in the area are under discussion, and that the sign would be visible to those units, if and when they are ever built. He did not state that the sign in question itself would endanger the proposed housing project, but rather that "one sign leads to permission for a second sign and that leads to a third sign."

None of this, separately or cumulatively, suffices to support or justify a finding that the sign would "menace and endanger the public health, security, general welfare and morals." There is not a shred of credible evidence to that effect. That a sign will be visible is hardly a reason to ban it; visibility, indeed, is the whole purpose of the sign. Aside from the Department of Transit and Traffic's objection based upon its erroneous interpretation of the State law, the opposition to the sign was ostensibly based solely upon the vague and wholly unsupported fear that it might hinder efforts to improve an area one or more blocks away. Such speculation, however, in the absence of any direct evidence to sustain it, is not a proper reason to deny a use that the City Council has said is a proper one. See *Rockville Fuel v. Board of Appeals,* 257 Md. 183 (1970).

Much the same situation pertains with respect to the Terminal Street sign. In that case, the Board concluded:

"The Board, after having given due regard and consideration to the nature and condition of all the adjacent uses and structures and the facts in this case, and the letters of protest, is of the opinion that the billboard should not be permitted, since in its opinion it is contrary to the provisions of Sections 11.0-5a and 11.0-5c of the Zoning Ordinance, that it would impair the present and future development in the area, and it is in close proximity to dwellings, churches, and other places of public gathering, and therefore the Board should not exercise its' (sic) discretionary power in order to permit this request.

"With due consideration to the guides and standards set forth in Sections 11.0-5a and 11.0-5c

of the Zoning Ordinance, and to the reports of the
several City Departments as required by the Zoning
Ordinance, the Board finds that the proposed poster
panels would menace and endanger the public
health, security, general welfare and morals."

The evidence before the Board, from which its findings
must come, was as follows:

(1) Letter from the City Health Department stating that
the proposed sign would present "no health hazard" provided
the area around it is kept clean;

(2) Letter from the City Fire Department expressing no
objection;

(3) Letter from the City Department of Transit and
Traffic objecting to the sign solely because of its presumed
violation of Transportation article, § 8-741;

(4) Letter signed by six "shopsteaders" in the Jonestown
area objecting to a sign on Hillen Street already approved by
the Board as well as to the instant application. The
shopsteaders expressed their concern over the "proliferation
of commercial signs in the Jonestown area", believed that
"this trend for bill board approval to be both counter
productive to our efforts and to the interests of the area in
general", and recorded their opposition to the approval of
"any additional billboards in the Jonestown area."

(5) Letter from the City Department of Planning stating
that the sign would be visible from the Jones Falls
Expressway, the Mt. Vernon renewal area, the Chesapeake
Center, and Center Stage. The Department noted that
"[p]roperty owners in the vicinity have expressed concern
that billboards would have adverse effects upon their leasing
programs", but gave no details as to who these property
owners were, what their "leasing programs" were, or what
adverse effects the signs would have on them. The
Department recommended disapproval because, in its
corporate opinion, the sign would not comply with the
following standards applicable to conditional uses:

"3. the nature of surrounding area and the extent

to which the proposed use might impair its present and future development;

4. the proximity of dwellings, churches, schools, public structures, and other places of public gathering;

8. the preservation of cultural and historic landmarks;

9. any urban renewal plan approval by the Mayor and City Council or the Master Plan for the City approved by the Planning Commission."

Attached to this letter was a plat of the area which contains no legends as to distances, denotes no dwellings, schools, or cultural or historic landmarks, shows one church at least five blocks away (and separated from the sign by the Jones Falls Expressway), and, as to "public structures", denotes only the City Jail, the Maryland Penitentiary, and the District Court building.

No one appeared at the hearing before the Board in opposition to the application.

This Court is not insensitive to the commendable efforts of the City Government to make the downtown and midtown areas of the City a pleasant place to live, work, and recreate. Nor does it ignore or belittle the concerns of those participating in that effort over a proliferation of billboards that, to them, are unsightly. But the Court is not the policy-making arm of the City Government; its function is to interpret and apply the law correctly and to make certain that the other instruments of government do likewise.

The City Council, by permitting billboards as a conditional use, has legislatively determined that, as a general rule, they do not menace or endanger the public health, safety, general welfare, or morals within the area of their permitted use. The Board has a limited amount of discretion to deny the use if there is substantial evidence to show that, notwithstanding the underlying legislative conclusion, a particular structure would, in fact, have such an effect. But it may not thwart the legislative will based upon unspecific and unsupported protestations and

concerns. There is no evidence whatever in this record to show that the public health, safety, welfare, or morals would be affected in the least by this particular sign. There is no evidence even that it would be "in close proximity to dwellings, churches, and other places of public gathering." In short, these conclusions of the Board have absolutely no evidentiary support, and are therefore, by law, arbitrary and capricious.

For these reasons, the decisions of the Board in these two cases are reversed. The cases are remanded to the Board with instructions to approve the applications, appellee to pay the costs in each case.