SOMMERS *v.* MAYOR AND CITY COUNCIL
OF BALTIMORE ET AL.

[No. 14, September Term, 1957.]

2

*Decided December 12, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Eugene Hettleman* for the appellant.

*Shirley Brannock Jones, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor,* and *Hugo A. Ricciuti, Deputy City Solicitor,* on the brief, for the City of Baltimore, appellee.

Submitted on brief by *Murray MacNabb* for the intervening defendants, appellees.

BRUNE, C. J., delivered the opinion of the Court.

The main question in this case is whether or not the bed of a nine-foot alley at the rear of a lot in Baltimore City, title to the bed of the alley being held by the lot owner, may be included in determining whether the lot meets the area requirements of the Baltimore City Zoning Ordinance for three-family occupancy of a three-story dwelling located on the lot. There is no dispute as to the facts that (1) if the area of the alley is excluded, the applicable area requirements for three-family occupancy are not met and (2) if the alley area may be included, such requirements are met. The Board of Municipal and Zoning Appeals held that the bed of the alley could not be so included, its order was affirmed by order of the Baltimore City Court, and the lot owner appeals from the latter order. The appellees are the City of Baltimore and a neighborhood improvement association.

The appellant also seeks to raise a further contention, which we shall dispose of first. He asserts that the provisions of the Zoning Ordinance of Baltimore City relating to regulation of the number of families which might occupy buildings and lots, prior to the revision of the Zoning Ordinance on May 21, 1953, were void because of vagueness. Upon this contention he rests the further contention that the controlling date for determining whether or not a non-conforming use existed upon the premises here in question should be May 21, 1953, and not the date of the original Zoning Ordinance of March 30, 1931. This contention was not made before the Board, nor was it asserted in the petition. The Zoning Enabling Act (Code Supp., 1957, Article 66B, Section 7 (j)) requires the grounds of alleged illegality to be stated in the petition. The case proceeded upon the concession by the City (the correctness of which we do not now decide) that this question might be raised at the hearing and Judge Byrnes disposed of it in these two succinct paragraphs:

"Counsel for appellant also questions the validity of the provisions of the Ordinance defining the word 'family', and contends that in any event, the definition was not effective prior to 1953, when the Amendment containing the definition was adopted. No authorities were submitted in support of this argument. Ross Saunders, Zoning Enforcement Officer, testified that the definition of the word 'family' as contained in the Ordinance is simply an affirmation of the definition followed by Zoning Officials for many years.

"This Court finds that the separate cooking facilities guide, contained in the definition, is reasonable and, as this test was part of the administrative policy of the Zoning Department prior to the 1953 Amendment, appellant's argument that the definition is vague and indefinite, is without merit."

We agree with Judge Byrnes' holding on this question. We note that the appellant did not, in this Court, attack the validity of the definition of "family" contained in the 1953 Ordinance (Sec. 48 (v)) which is as follows:

"A person living alone, or two or more persons living together as a housekeeping unit, with separate identity from other persons or groups in the same

structure, having cooking facilities as a part of the area designated for his or their use. Provided further, that this provision shall be construed so as not to prohibit the renting of a room without housekeeping facilities for use by not more than two persons in an ordinary two-story dwelling."

It is hardly necessary to add that the rule applied by Judge Byrnes, which gives great weight to long continued and unvarying administrative interpretation of a statutory provision, is well established. See *Wells v. Price,* 183 Md. 443, 457, 37 A. 2d 888, and *Dept. of Tidewater Fisheries v. Sollers,* 201 Md. 603, 615, 95 A. 2d 306, and cases therein cited.

The meaning of the term "family" as used in the 1931 Baltimore City Zoning Ordinance was considered by Judge Sherbow in *Suwalski v. Mayor & City Council of Baltimore,* in the Circuit Court No. 2 of Baltimore City, Daily Record (Baltimore), April 23, 1948. No appeal was taken in that case. It was, however, commented upon in *Aaron v. City of Baltimore,* 207 Md. 401, 407, 114 A. 2d 639, in which we said "Judge Sherbow there concluded that in determining a family 'the real test is whether they constitute a separate household maintaining separate housekeeping facilities.'" We found it unnecessary in the *Aaron* case to pass upon the exact meaning of the term. We find nothing inconsistent between Judge Sherbow's interpretation of it in 1948 in the *Suwalski* case and Judge Byrnes' holding in 1957 in the instant case; and we note that each is supported by testimony as to the administrative construction of the Ordinance.

The testimony before the Board showed that the premises here in question were occupied as a single-family residence prior to March 30, 1931, and for some time thereafter. There was also testimony that when the appellant purchased the property in December, 1955, it was occupied by three families; but there was no testimony to show when three-family occupancy began. No useful purpose would be served by remanding the case so as to permit the appellant to offer proof which he asserts in this Court that he now has to show that three families occupied the premises prior to May 21, 1953, since, in our view, March 30, 1931, remains the critical date insofar

as a non-conforming use is concerned. In making this observation we do not mean to imply that the appellant would be entitled to such a remand based upon a claim of newly discovered evidence made, as it is, for the first time only on appeal to this Court.

We turn now to the appellant's principal contention that the area comprised in the alley at the rear of the property here in question should be included in determining whether or not the lot was large enough for three-family occupancy.

The appellees contend that it makes no difference in the result of this case whether the alley in question is a public alley or is (as the appellant contends) a private alley. We think that the appellees' contention is well founded. We are here concerned primarily with the meaning of the word "lot" as used in the Baltimore City Zoning Ordinance. Section 48 (b) defines a lot in this way:

> "A lot is a parcel of land now or hereafter laid out and occupied by one building and the accessory buildings or uses customarily or necessarily incident to it, including such open spaces as are required by this ordinance."

Whether the alley in question is public or not, it seems to be unquestioned that others—at least the owners of land abutting on the alley—have rights to use the alley as such. See *Hackerman v. City of Baltimore,* 212 Md. 618, 130 A. 2d 732. We understand it to be conceded that the public has actually used the alley for many years. Under these circumstances the area included in this alley at the rear of the appellant's property is not "a parcel of land * * * laid out and occupied by one building and the accessory buildings or uses customarily or necessarily incident to it". We agree with Judge Byrnes' view that the definition above quoted "shows that a lot, for zoning purposes, means only the land used for a building or uses incident to the building."

Under Sections 25 F and 25 J of the present Baltimore City Zoning Ordinance, there are certain provisions dealing with rear and side yard requirements, under which the Board of Municipal and Zoning Appeals may allow special exceptions

by allowing one-half of the width of an abutting alley to be included in meeting those requirements. The absence of any such general provision relating to population density strongly suggests that the inclusion of an alley or of any part of an alley in calculating area was not intended. See *Clarks Lane Garden Apts. v. Schloss,* 197 Md. 457, 459, 79 A. 2d 538, where after referring to the possible inclusion of one-half of an alley in meeting rear yard requirements, Judge Henderson, writing for the Court, went on to say: "There is no such exception in regard to front yards abutting on streets. Paragraph 24 [now § 27] sets out a table of minimum depths of 'front yards along undeveloped streets' which 'may be laid out after the passage of this ordinance'. Inferentially at least the Ordinance would seem to exclude streets, and even undeveloped streets, from the area requirements." We think this holding is equally applicable to the exclusion of the alley from the computation of the area in the instant case.

The appellant seeks to avoid this conclusion by invoking what is now Sec. 31 M of the present Ordinance, which is derived from Ordinance No. 1682, adopted May 15, 1951, which added a new sub-section or paragraph (28 M) to the Ordinance as then in effect. Section 31 M now reads as follows:

"In determining the number of families which may be housed on a lot or tract of land under sub-section A of Section 25 and in determining whether or not a tract of land contains five acres under sub-section M [should be N] of Section 25, the area of land designated on an approved sub-division plat or builder's location plat and thereby or thereafter given or dedicated to the Mayor and City Council of Baltimore by the owner, for the purpose of widening a street or alley abutting the lot or tract involved, shall be included in the area of such lot or tract of land."

There is much controversy between the parties as to whether Section 31 M applies to lots generally or only to lots containing five acres or more used for so-called garden type apartments, which are dealt with by what is now Section 25

N, which is derived from Ordinance No. 583, adopted February 9, 1949, which added a new sub-section or paragraph (28 L) to the Ordinance as then in effect. Section 25 N (old Section 28 L) was apparently adopted to change the Ordinance as it had been construed with regard to lot lines in large tracts to be developed for garden type apartments with "intended singleness in use and operation", in *Norwood Heights Improvement Ass'n v. Mayor and City Council of Baltimore,* 191 Md. 155, 60 A. 2d 192, decided in June, 1948. Neither this amendment of the Ordinance nor the dissenting opinion in that case suggests any difference with the statement in the majority opinion (191 Md. at 161) that "The definitions in Paragraph 44 * * * [now § 48] seem to make it clear that 'lots' and 'buildings' are the units of zoning."

Section 31 M was apparently adopted to alter the result of the decision in the *Clarks Lane Garden Apartments* case, *supra,* decided March 16, 1951. The appellees contend that this was as far as it goes or was intended to go; the appellant contends that by its reference to what is now Section 25 A (old § 22 A) as well as to Section 25 N (old § 28 L) it was intended to go and does go further and is of general application to population density.

We find it unnecessary to resolve this question because Section 31 M does not, under either construction contended for, seem to us to have any application to the present case. The only streets or alleys which it provides for including in calculating the area of a lot or tract are such as may be comprised in "the area of land designated on an approved subdivision plat or builder's location plat and thereby or thereafter given or dedicated to the Mayor and City Council of Baltimore by the owner for the purpose of widening a street or alley abutting the tract involved." The appellant contends that there has been no dedication and that under an existing ordinance, because of the narrowness of the alley in question, the City cannot now accept an offer to dedicate it. Beyond this, the only plat submitted or referred to in the case is simply a surveyor's plat, made in 1956, and apparently not recorded, showing the location and dimensions of the property and of the existing improvements thereon which were built before

the appellant's purchase of the property. It also shows the location of the alley, of the street upon which the property fronts and of a nearby cross street and it shows some other details of a type usual in plats of this kind. Neither the plat nor anything else in the printed record extract (or elsewhere in the record, so far as we are aware) suggests that any building or sub-division was or is contemplated or that this plat is either an approved sub-division plat or a builder's location plat or that the plat even suggests—far less that it makes—a dedication of the street, or that the owner (appellant) has made or even contemplates a dedication of the alley or any part of it.

Under these circumstances we can see no possible basis upon which Section 31 M of the present Baltimore City Zoning Ordinance can be of the slightest benefit to the appellant.

The order of the Baltimore City Court is affirmed.

*Order affirmed, with costs.*